IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.                                                          Criminal No. 18-292

ROBERT BOWERS

**UNITED STATES' MOTION IN LIMINE REGARDING ADMISSION OF RELEVANT GRAPHIC EVIDENCE THAT IS MATERIAL TO PROVE THE CHARGED OFFENSES**

AND NOW comes the United States of America, by its attorneys, Troy Rivetti, Acting United States Attorney for the Western District of Pennsylvania, Soo C. Song, Eric G. Olshan, and Nicole Vasquez Schmitt, Assistant United States Attorneys for said district, Mary J. Hahn, Trial Attorney, Civil Rights Division, and Barry K. Disney, Trial Attorney, Capital Case Section, and hereby files this Motion in Limine regarding the admission of a limited number of graphic, highly probative exhibits during the guilt phase of the trial. This evidence is material and probative to establish the defendant's motive and intentionality in carrying out the attack, as well as to prove the killings, attempted killings, malice, violent force, and extensive bodily injury that resulted from defendant Robert Bowers's deliberate use of dangerous weapons.

**I.      Charged Offenses Require Proof Of Violence and Murder**

On October 27, 2018, the defendant, Robert Bowers, drove to the Tree of Life Synagogue and entered the building carrying multiple firearms, including a high-powered AR-15 rifle. Before entering the Tree of Life Synagogue, the defendant, Robert Bowers, posted on gab.com, "HIAS likes to bring invaders in that kill our people. I can't sit by and watch my people get slaughtered. Screw your optics, I'm going in." Doc. No. 44 at 2.

1

The defendant opened fire, killing 11 congregants and injuring additional members of the Tree of Life, Dor Hadash and New Light congregations.  While inside the Tree of Life Synagogue, the defendant made statements expressing his desire to "kill Jews."  Law enforcement responded to the scene and the defendant also opened fire upon them, injuring multiple public safety officers.  Doc. No. 44 at 2.

The Superseding Indictment charges the defendant with 63 counts of civil rights and firearms offenses.  Doc. No. 44.  Specifically, for his actions which resulted in death and bodily injury, and which involved an attempt to kill and the use of a dangerous weapon and a firearm, the defendant was charged with: 25 counts of Obstruction of Free Exercise of Religious Beliefs (18 U.S.C. § 247); 13 counts of committing a Hate Crime (18 U.S.C. § 249); and 25 counts of Use and Discharge of a Firearm to Commit Murder During and in Relation to a Crime of Violence and Possession of a Firearm in Furtherance of a Crime of Violence (18 U.S.C. § 924(c)).  Id.

## II.      Graphic Evidence Is Relevant And Probative

During the guilt phase of the trial, the United States will seek to admit a limited number of highly relevant and necessary crime scene and autopsy images.[1]  Images of the 11 deceased victims within the Synagogue are extremely probative of the defendant's specific intent and motive—that is, that he violently and lethally targeted victim congregants because they were Jewish and while they were engaged in the practice of their faith.  These exhibits will also assist the jury in receiving witness testimony as to the chronology of the events on October 27, 2018, will provide the jury with clear depictions of the specific location of the victims during the attack and, for the deceased

---

[1]      The United States will provide the defendant with its guilt phase exhibit list on April 7, 2023, which will include the specified graphic images.  These images were previously provided to the defendant through discovery.  Given the sensitive nature of the images, the proposed graphic exhibits will be submitted under seal for review by the Court and defense counsel.  See U.S.C. § 3771(a)(8) (crime victims have the right "to be treated with fairness and with respect for the victim's dignity and privacy"); Doc. No. 24.

victims, their location and condition at the time of their deaths.  Exhibits from the autopsies of the deceased victims will aid the jury in receiving the testimony of medical examiners and illustrate findings as to the cause and manner of death of the victims.

Under the Federal Rules of Evidence, all evidence is admissible if it is relevant—if it tends to make the existence or nonexistence of a disputed material fact more probable than it would be without that evidence.  Fed. R. Evid. 401, 402.  There is "a strong presumption that relevant evidence should be admitted."  Forrest v. Beloit Corp., 424 F.3d 344, 355 (3d Cir. 2005) (citation omitted).  The district court has "the role of the gatekeeper to admit or exclude evidence."[2]  In re Unisys Sav. Plan Litig., 173 F.3d 145, 158 (3d Cir. 1999).  A district court may exclude relevant evidence if its probative value is "substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  "Rule 403 is a rule of inclusion, generally favoring admissibility,"  United States v. Kolodesh, 787 F.3d 224, 237 (3d Cir. 2015) (citation omitted), so "courts may utilize [it] only rarely to cause the exclusion of evidence."  United States v. Universal Rehab. Servs., Inc., 205 F.3d 657, 664-65 (3d Cir. 2000) (en banc); see also United States v. Gonzalez, 905 F.3d 165, 196 (3d Cir. 2018) (quoting United States v. Claxton, 766 F.3d 280, 302 (3d Cir. 2014)).

As the most direct and uncontroverted evidence of violent crimes, crime scene and autopsy images are generally admissible and relevant under Rule 401 when they have an articulable connection to an element of a charged offense.  United States v. Escalante-Melgar, 567 F. Supp.

---

[2]    To fulfill its gatekeeping role under Rule 403 of the Federal Rules of Evidence, upon review of the proffered exhibits, this Court will need to assess the probative value of the graphic exhibits against the elements of the charged offenses, and determine and articulate whether the risk of unfair prejudice substantially outweighs the probative value. See United States v. Cunningham, 694 F.3d 372, 384 (3d Cir. 2012).

3d 485, 492-93 (D.N.J. 2021) (photographs of a murder scene were probative to "help the jury understand the timeline of the murder," and "corroborate the testimony of fact witnesses;" autopsy photographs were probative to support "technical testimony" by a medical examiner and ballistics expert. Any unfair prejudice from this "graphic content" did not substantially outweigh the "highly relevant" probative value); United States v. Con-ui, Cr. No. 3:13-123, 2017 WL 783437, at *4, *6, *7 (M.D. Pa. Mar. 1, 2017) ("[Defendant's] apparent willingness to concede certain facts, or conceding guilt, does not make the video irrelevant.").

In the guilt phase of trial, photographs of deceased victims are admissible when they have substantial probative value and are not offered for an impermissible purpose. See, e.g., United States v. Salameh, 152 F.3d 88, 122-23 (2d Cir. 1998) ("Probative evidence is not inadmissible solely because it has a tendency to upset or disturb the trier of fact." (citing Kuntzelman v. Black, 774 F.2d 291, 292 (8th Cir. 1985) (admission of crime scene photographs at a homicide trial is error only if the photographs are not even "arguably relevant and probative"), and United States v. Brady, 579 F.2d 1121, 1129 (9th Cir. 1978) (only on rare occasions when the evidence in question "is of such gruesome and horrifying nature that its probative value is outweighed by the danger of inflaming the jury" should it not be received in evidence))). For example, the Third Circuit found that "death scene and autopsy photographs" were admissible under Rule 403, because the physical condition of the malnourished child victim was "highly probative" of the defendants' failure to conduct required home visits. United States v. Manamela, 463 F. App'x 127, 131 (3d Cir. 2012) (unpublished); see also, Gov't of Virgin Islands v. Albert, 241 F.3d 344, 349 (3d Cir. 2001) (admission of a "gruesome" 45-minute video of a murder scene, which was "clearly relevant to demonstrate the government's theory" of how the crime was committed and was inconsistent with the defense theory, was not an abuse of discretion).

4

The fact that "photos might have been graphic does not render them unfairly prejudicial under Rule 403[.]" United States v. Osborne, 739 F. App'x 11, 18 (2d Cir. 2018); see also United States v. Salim, 189 F. Supp. 2d 93, 98 (S.D.N.Y. 2002) ("[T]he graphic or disturbing nature of a photograph alone is not enough to render it inadmissible.") (citing United States v. Velazquez, 246 F.3d 204, 210-11 (2d Cir. 2001)).  In many instances, graphic images convey a relevant point much more persuasively than mere testimony alone. United States v. Fields, 483 F.3d 313, 356 (5th Cir. 2007).  ("[T]he Government's point that the body had decomposed too much for any physical evidence to be found was made more effectively with images than it would have been with vague generalizations.").  "[A] picture is worth a thousand words, and the Government is not required to sanitize its case because a victim has died," United States v. Werther, Cr. No. 11-434, 2013 WL 1410136, at *1 (E.D. Pa. 2013) (referencing United States v. Cross, 308 F.3d 308, 325 (3d Cir. 2002)); cf. United States v. Lujan, 603 F.3d 850, 858 (10th Cir. 2010) ("[T]he vicious, brutal nature of a defendant's conduct is not itself sufficient to justify a complete exclusion of evidence tending to show the defendant engaged in those acts.").

Autopsy photographs have regularly been admitted by federal courts. See, e.g., Velazquez, 246 F.3d at 210-11; United  States v. Frappier, 807 F.2d 257, 262 (1st Cir. 1986) (autopsy pictures "were not egregiously shocking; most if not all of them bore reference to medical testimony and corroborated [witness's] account of the murder"); Bunch v. Thompson, 949 F.2d 1354, 1365 (4th Cir. 1991); United States v. Greatwalker, 356 F.3d 908, 912-13 (8th Cir. 2004); United States v. Boise, 916 F.2d 497, 504 (9th Cir. 1990); United States v. Sarracino, 340 F.3d 1148, 1168-69 (10th Cir. 2003); Jacobs v. Singletary, 952 F.2d 1282, 1296 (11th Cir. 1992); United States v. Rezaq, 134 F.3d 1121, 1137-38 (D.C. Cir. 1998) (government allowed to place several enlarged autopsy photographs on an easel beside jury box to prove death and cause); Spinks v. McBride, 858 F.

Supp. 865, 868-69 (N.D. Ind. 1994).      In an illustrative case, the Tenth Circuit explained that

autopsy photographs, though graphic by nature, are relevant and not unfairly prejudicial when used

by the government to prove its case:

> Although the [autopsy] photos and slides were undeniably gruesome,
> gruesomeness alone does not make photographs inadmissible.   These
> photos and slides were a substantial aid in illustrating the testimony of the
> pathologist and they had considerable probative value not only in proving
> the nature of Valerie's injuries and the cause of her death, but also on the
> issue of malice aforethought.   In light of this probative worth, their
> admission was not unduly prejudicial.  Nor are they cumulative since, as the
> judge pointed out, they depict the body from different angles and vantage
> points than do the photos taken when investigators first discovered the body
> and thereby gave the jury  a more complete understanding of the injuries.

United States v. Soundingsides, 820 F.2d 1232, 1243 (10th Cir. 1987) (internal citations and

quotations omitted).

In the context of violent crimes and killings, courts have routinely determined that the

probative value of crime scene and autopsy images is not substantially outweighed by the risk of

unfair prejudice.  See e.g., United States v. Simpson, 44 F.4th 1093, 1098 (8th Cir. 2022) (no abuse

of discretion in admitting limited number of photographs of crime scene and autopsy); Fields, 483

F.3d at 354 ("[A]dmitting gruesome photographs of the victim's body in a murder case ordinarily

does not rise to an abuse of discretion where those photos have nontrivial probative value.");

Salameh, 152 F.3d at 122-23  (affirming admission of "graphic" and "disturbing" crime scene and

medical photographs of World Trade Center bombing victims, including corpse of a pregnant

woman, used to support expert's conclusions as to cause of death);  cf. Rivers v. United States,

270 F.2d 435, 439 (9th Cir. 1959) ("The persistent assertion in criminal cases that the jury should

not be permitted the benefit of relevant evidence because it is thought to be 'gruesome' constitutes,

in effect, an attack upon the entire jury system.  If a jury is incapable of performing its function

without being improperly influenced by evidence having probative force, then the jury system is a

failure. It is not a failure.  Long experience convinces us of the ability and willingness of citizens called for jury duty to perform that duty with fidelity.").

In this prosecution of defendant Robert Bowers, due to his egregious conduct and the magnitude of the crimes with which he is charged, violence and death pervade the elements and correlative special findings of the charged offenses that the United States must prove beyond a reasonable doubt.  During the guilt phase of the trial, the United States will have to prove elements related to intentional killings constituting murder and attempts to kill; malice aforethought; violent interference with the free exercise of religious beliefs; the use of force; bodily injury; the use of a dangerous weapon and use, carrying, brandishing and discharge of a firearm to commit murder and resulting in death.  See, generally, Doc. No. 992-1 (United States' proposed Guilt Phase Jury Instructions).   The direct, graphic evidence and documentation of the defendant's actions constitute the most compelling and necessary proof of multiple elements and special findings related to the injuries and death suffered by the victims.  See United States v. Vosburgh, 602 F.3d 512, 537-38 (3d Cir. 2010) (upholding the admission of evidence where it had a "tendency to prove any of the elements of the charges").  But, as to defendant Bowers, the probative value of evidence under Rule 403 is broader than its mere utility in proving an element; it also will establish motive, including his anti-Semitic animus, and other important non-elements.  See, e.g., United States v. Foster, 891 F.3d 93, 110 (3d Cir. 2018).

Given the specific charges and elements that the United States must prove, a limited number of graphic exhibits should be admitted pursuant to Rules 401 and 403.  Among the images that the United States will seek to admit are images that powerfully demonstrate that the deceased victims in this case were in the midst of prayer and the exercise of their Jewish faith at that time that the defendant shot and killed them by rifle fire.  The crime scene images are crucial to illustrate

that the victim congregants were not only present in the Tree of Life Synagogue and in their respective Tree of Life, Dor Hadash, and New Light chapels and prayer rooms, but actively engaged in services, some in pews, and others carrying prayer books, wearing prayer shawls and yarmulkes.  Other images are necessary to prove the malice and amount of force deployed by the defendant in the intentional killings of each of the 11 victims and his attempted killings of surviving victims, including his use of a firearm and "dangerous weapon" to inflict bodily injury upon each victim.[3]  Testimony alone is insufficient and cannot possibly substitute for images that will accurately, comprehensively, and unflinchingly prove the necessary elements, means, and motives that underlie this defendant's crimes.

During the guilt phase of the trial, the United States also intends to offer testimony from forensic pathologists, practicing as medical examiners, who performed autopsy examinations upon the 11 deceased victims.  To corroborate and explain their testimony, the government will offer a limited subset of autopsy images of each of the 11 deceased victims.  Just as with crime scene images, this visual evidence will illustrate the medical examiner's testimony, demonstrate the nature and extent of fatal injuries to victims, support the expert testimony regarding cause of death, and assist the jury in understanding the testimony of the medical examiners and other guilt-phase trial witnesses.  No testimonial evidence could possibly equate to the visual demonstration and proof of malice-driven, intentional injury or adequately illustrate the findings of medical examiners regarding the nature of the victims' injuries and the cause and manner of their deaths.

---

[3]      For example, certain images show the location of victim bodies relative to bullet holes and strikes within the Synagogue.  Although these deceased victims cannot speak for themselves to describe the manner in which the defendant killed them (and for several of the deceased, there are no living witnesses who can testify about the defendant's specific actions as he murdered them), the images of their bodies in the Synagogue clearly demonstrate the defendant's intent to fire directly at those victims and his malice as he shot and murdered them.

The United States anticipates that the defendant may argue for the exclusion of graphic crime scene and autopsy images, citing both the risk of unfair prejudice[4] and alleging that such images are cumulative.[5]   However, the volume of probative, graphic images is the direct result of the carnage that he himself wrought in killing 11 victims and attempting to kill many others.   The calculus for assessing whether graphic images are cumulative must account for and accommodate the substantial number of victims and corresponding number of charged offenses.   Cf. United States v. McVeigh, 153 F.3d 1166, 1221 (10th Cir. 1998) ("The sheer number of actual victims and the horrific things done to them necessarily allows for the introduction of a greater amount of victim impact testimony [at the penalty phase].").

III.     **Conclusion**

In this prosecution, given the defendant's killing of 11 victims and attempted killing of many more, graphic evidence is relevant, material, and critical to establish the defendant's commission of the charged offenses.   Any risk of unfair prejudice does not substantially outweigh the highly probative value of the evidence, given that the United States has carefully distilled a subset of the most pertinent images and does not seek to offer all of the most graphic among them during the guilt phase.   Accordingly, the United States respectfully requests that this Court grant

---

[4]     In arguing against the admission of such evidence, the defendant may invoke inapposite Third Circuit precedent that has developed in relation to child exploitation prosecutions.  Importantly, there are critical distinctions between child sexual abuse material (CSAM) and the documentation of homicides and other violent crime. The Third Circuit has never authorized judges to bar all graphic evidence or to "scrub the trial clean." Cunningham, 694 F.3d at 391.  Rule 403 of the Federal Rules of Evidence does not "shield [...] defendants who engage in outrageous acts, permitting only the crimes of Caspar Milquetoasts to be described fully to a jury." Cross, 308 F.3d at 325 (citation and quotation marks omitted).  The Third Circuit, accordingly, has clarified that Rule 403 "does not protect defendants from devastating evidence in general." United States v. Heatherly, 985 F.3d 254, 266 (3d Cir. 2021).

[5]     In United States v. Finley, 726 F.3d 483 (3d Cir. 2013), the government offered, as trial exhibits, a small subset of the very graphic child sexual abuse material (CSAM) found on the defendant's computer; the trial court reviewed the exhibits and admitted them over a Rule 403 objection.  Id. at 488-89.  The Third Circuit found no abuse of discretion.  The content of the videos was probative of the defendant's knowing possession and distribution of CSAM, and the videos, though disturbing, were "not unfairly prejudicial to the point where unfair prejudice substantially outweighed probative value." Id. at 492-94.

the United States' Motion in Limine and admit a limited number of highly relevant and probative

graphic exhibits that depict the victims on scene at the Tree of Life Synagogue and that document

critical aspects of the victims' autopsy examinations.

<div style="margin-left: 50%;">

Respectfully submitted,

TROY RIVETTI
ACTING UNITED STATES ATTORNEY

s/Troy Rivetti
TROY RIVETTI
Acting U.S. Attorney
PA ID No. 56816

s/Soo C. Song
SOO C. SONG
Assistant U.S. Attorney
DC ID No. 457268

s/Eric G. Olshan
ERIC G. OLSHAN
Assistant U.S. Attorney
IL ID No. 6290382

s/Nicole Vasquez Schmitt
NICOLE VASQUEZ SCHMITT
Assistant U.S. Attorney
PA ID No. 320316

s/Mary J. Hahn
MARY J. HAHN
Trial Attorney
Civil Rights Division
DC ID No. 500193

s/ Barry K. Disney
BARRY K. DISNEY, Trial Attorney
Capital Case Section
KS ID No. 13284

</div>