**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No. 18-292-RJC |
| vs. | ) | |
| | ) | Judge Robert J. Colville |
| ROBERT BOWERS | ) | |
| | ) | |

**MEMORANDUM ORDER OF COURT**

Robert J. Colville, United States District Judge

Before the Court is the Motion Under the Fifth, Sixth, and Eighth Amendments for Materials Related to Jury Selection and Potential Claims Under *Batson v. Kentucky* ("Motion for Materials") (ECF No. 1060) filed by Defendant Robert Bowers. The Government has filed a Response (ECF No. 1075), and the Defendant has filed a Reply (ECF No. 1097). Following the filing of Defendant's Reply, the Government filed a Surreply (ECF No. 1100). The Motion for Materials has been fully briefed and is ripe for disposition. For the reasons that follow, the Motion for Materials will be denied.

The Court has thoroughly reviewed the Motion for Materials, the relevant briefing, and all sources cited therein. The Court agrees with the comprehensive analysis set forth in the Government's Response, and finds that Defendant fails to set forth a sufficient basis for the Court to compel production of the untimely, burdensome, and overbroad discovery requests set forth by way of Defendant's Motion. The Motion for Materials seeks records concerning the peremptory strike histories of: (1) prosecutors in the United States Attorney's Office for the Western District of Pennsylvania; (2) prosecutors in the Capital Case Section within the Criminal Division of the Department of Justice; and (3) prosecutors within the Civil Rights Division of the Department of Justice, as well as any data concerning race, Hispanic or Latino origin, and gender for jurors

1

stricken through the use of peremptory strikes by these prosecutors for the past ten years.  Mot. ¶¶ 2-3, ECF No. 1060.  Defendant requests the same information, though not temporally limited, with respect to any case in which counsel of record for the Government in this case has appeared, whether in the Western District of Pennsylvania or in another federal or state jurisdiction.  *Id.* at ¶ 4.  Defendant further seeks:

> [T]raining materials and policy manuals or other documentation related to *Batson v. Kentucky*, 476 U.S. 79 (1986), for attorneys in the U.S. Attorney's Office for the Western District of Pennsylvania, attorneys in the Capital Case Section within the Criminal Division of the U.S. Department of Justice, and attorneys in the Civil Rights Division of the U.S. Department of Justice for the past ten years.

*Id.* at ¶ 5.  Defendant also requests that the Clerk of Court disclose the participant identification number, juror number, race, Hispanic or Latino origin, gender, and zip code of every person sent a juror summons in this case, other than those for whom the Clerk already has provided such information.  *Id.* at ¶ 1.  Finally, Defendant requests that the Court record the race, Hispanic or Latino origin, and gender of each member of the venire, which potential juror was stricken, and by which party, during jury selection in this case.  *Id.* at ¶ 6.

Initially, with respect to Defendant's request for information from the Clerk of Court respecting the individuals who were sent juror summons in this case, the Court finds, as the Government correctly notes and Defendant does not contest in his Reply, that Defendant has already been provided the data the Motion for Materials seeks from the Clerk's Office.  The Court will not direct the Clerk's Office to organize this information for the Defendant.

Turning to Defendant's requests for the peremptory strike histories of prosecutors and training materials related to *Batson*, the Court notes that the United States Court of Appeals for the Third Circuit has explained:

> When determining whether there has been purposeful discrimination in the striking of a prospective juror, the district court engages in a three-step process:

First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*United States v. Savage*, 970 F.3d 217, 266 (3d Cir. 2020) (quoting *Snyder v. Louisiana*, 552 U.S. 472 (2008)).  The United States Supreme Court has explained:

*First*, what factors does the trial judge consider in evaluating whether racial discrimination occurred?  Our precedents allow criminal defendants raising *Batson* challenges to present a variety of evidence to support a claim that a prosecutor's peremptory strikes were made on the basis of race.  For example, defendants may present:

• statistical evidence about the prosecutor's use of peremptory strikes against black prospective jurors as compared to white prospective jurors in the case;

• evidence of a prosecutor's disparate questioning and investigation of black and white prospective jurors in the case;

• side-by-side comparisons of black prospective jurors who were struck and white prospective jurors who were not struck in the case;

• a prosecutor's misrepresentations of the record when defending the strikes during the *Batson* hearing;

• relevant history of the State's peremptory strikes in past cases; or

• other relevant circumstances that bear upon the issue of racial discrimination.

*Flowers v. Mississippi*, 139 S. Ct. 2228, 2243 (2019).

It bears noting that Defendant has not cited to case law wherein a court granted relief similar to the wide-ranging discovery requested by Defendant, nor does he point to a case where a court compelled, in any fashion, production from the Government of raw data concerning the peremptory strike histories of prosecutors.  Defendant fails to advance argument as to why this

3

data, completely devoid of context, will ultimately prove relevant in this case. *See Lee v. Comm'r,*
*Alabama Dep't of Corr.*, 726 F.3d 1172, 1224 (11th Cir. 2013) ("Indeed, 'the number of persons
struck takes on meaning only when coupled with other information such as the racial composition
of the venire, the race of others struck, or the voir dire answers of those who were struck compared
to the answers of those who were not struck.'" (quoting *United States v. Ochoa–Vasquez*, 428 F.3d
1015, 1044 (11th Cir. 2005))).   To be sure, *relevant* historical evidence of the Government's
*discriminatory* peremptory strikes in past cases may be introduced by a defendant under *Batson*,
*Flowers*, 139 S. Ct. at 2243; 2245, but such evidence is not required for a successful *Batson*
challenge, as *Batson* itself did away with such a requirement, *id.* at 2245.   Further, Defendant
points to no authority whereby a Court has determined that it is the Government's responsibility
in a criminal case to provide a defendant with all data and records concerning its past peremptory
strikes.  Such onerous production,[1] especially at this late juncture, would be of uncertain probative
value given the lack of context associated with the data sought, and particularly in the absence of
any assertion by Defendant that any of the offices or prosecutors at issue have engaged in
discriminatory practices in the past.  The information Defendant requests by way of the Motion
for Materials amounts to a speculative fishing expedition for information that is clearly very
uncertain in terms of any probative value, and such speculative discovery requests should be
rejected.  *See Williams v. Beard*, 637 F.3d 195, 210–11 (3d Cir. 2011).

The following argument from the Government is also well-taken by the Court: "[i]f *Batson*
challenges required such data, then such onerous discovery would be required to be disclosed by
both parties in every criminal and civil case tried before a jury in every state and federal court

---

[1] Which the Government correctly notes would include "ten years' worth of data from three Department of Justice
offices, including hundreds [of] prosecutors who are entirely unrelated to the counsel of record in this case . . . ."
Resp. 14, ECF No. 1075.

across the country."[2]  Resp. 3, ECF No. 1075.  The Court agrees, and it is telling that Defendant has not pointed to a single case wherein a court permitted discovery similar to that which Defendant seeks here.  The Government, however, does cite to a case where similar, though notably less intensive, discovery requests, including a request for training materials, were outright denied in the absence of any asserted historical evidence of discriminatory jury selection practices and policies by the prosecuting office or individual prosecutors.  *See United States v. Barnette*, No. 3:97 CR-23, 2009 WL 2105752, at *6 (W.D.N.C. July 13, 2009) ("Even now Barnette does not allege or point to any evidence that prior to or at the time of his *Batson* hearing, the United States Attorney's Office for the Western District of North Carolina trained or encouraged its prosecutors to exclude minorities from jury service.  Nor does he allege or point to any evidence that either of his prosecutors had a reputation for or a history of engaging in discriminatory jury selection practices.  Whatever else *Batson* and *Miller–El* might require, neither authorizes a defendant to go on a fishing expedition through the Government's files in hopes of finding some damaging evidence.  Barnette's discovery requests three through seven are denied as overly broad, overreaching, burdensome and without evidentiary foundation.").[3]  The Court further notes that Defendant's Reply is entirely conclusory, provides no substantive analysis or counterargument to the Government's thorough Response, and, again, fails to cite to a single case where a court

---

[2] *Batson* also applies to a criminal defendant's peremptory strikes, *Flowers*, 139 S. Ct. at 2243, and, under Defendant's theory, he would presumably be required to provide a reciprocal production regarding Defense Counsels', and related firms' and offices', peremptory strike histories to the Government.  Defendant has not asserted that he has already voluntarily provided reciprocal information to the Government or that he is willing to do so, nor has he explained why he has waited this long in the litigation to provide the same.

[3] *See also id.* at * 3-4 (explaining: (1) "Indeed, Barnette does not cite, nor could this Court find, any U.S. Supreme Court or federal appellate court case requiring disclosure under *Brady* of evidence that could be relevant to a *Batson* challenge."; (2) "Therefore, *Miller–El* did not vest or extend discovery rights to the opponent of allegedly discriminatory peremptory strikes."; and (3) "The Federal Rules of Criminal Procedure also are inapplicable because none of the requested material falls under Rule 16(a)(1)."

permitted discovery similar to that sought by Defendant, let alone in a circumstance similar to that presented herein.  Defendant's Motion for Materials will be denied.

While not the basis for the Court's denial of the Motion for Materials, the Court further notes that the Motion for Materials was filed well after the expiration of the pretrial motion deadline in this matter, and at a notably late juncture, with voir dire scheduled to begin five weeks from the filing of the Motion for Materials.  While the Court acknowledges, though does not necessarily accept, Defendant's argument that his Motion is not covered by Rule 12(b)(3) and is thus not untimely, the Court can perceive, and Defendant advances, no reasonable basis as to why the Motion for Materials, which, again, seeks voluminous information spanning, at a minimum, a ten-year period from three different offices of the Department of Justice, was held until this close to the commencement of trial in this matter.  The Court has afforded the parties several opportunities to advise the Court of any anticipated motions, and has further extended the motion deadline on numerous occasions.  Prior to filing the Motion, the Defense was entirely silent as to the information sought by way of the Motion for Materials, despite knowing the presumptive start date of voir dire in this matter since September of 2022.  It would strain credulity to argue that the Defense was, at any point during the pendency of this action, unaware of the possibility that it might eventually desire to raise *Batson* issues during jury selection.  Yet Defendant waited until five weeks before voir dire to file his Motion for Materials.  Given the same, and given that the materials Defendant now seeks could have been sought at a much earlier juncture, are now sought following the expiration of the pretrial motion deadline in this matter, and threaten to delay the start of trial in this matter, the Court also finds that Defendant's Motion for Materials is untimely.

Finally, with respect to Defendant's request that, during jury selection in this case, the Court record the race, Hispanic or Latino origin, and gender of each member of the venire, which

potential juror was stricken, and by which party, the Court notes that the Government has not responded to this request.  In support of this request, Defendant cites to the American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, 31 Hofstra L. Rev. 913, 1033 (2003), for the proposition that "[C]ounsel should ensure that it is clear from the record not only that the prosecutor struck a particular juror, but the race of the juror, of every other member of the venire, and the extent to which the unchallenged venire members shared the characteristics claimed to be justifying the challenge."  Mot. 4, ECF No. 1060.  Given that the Government seemingly does not oppose Defendant's request to create a record, the Court is inclined to permit Defense Counsel to place on the record information they believe might eventually be relevant to a possible *Batson* challenge during jury selection in this matter.  Because this request is not a request for "materials," and because the Court intends to afford relief that is different than that explicitly requested by Defendant, the Court still considers the Motion for Materials to be denied.

For the reasons discussed above, Defendant's Motion for Materials is denied.

BY THE COURT:

*/s/Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: April 14, 2023

cc: All counsel of record

7