IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT BOWERS | Criminal No. 18-292 |

**UNITED STATES' NOTICE IN OPPOSITION TO
DEFENDANT'S MOTION TO STRIKE JUROR NO. 119**

AND NOW comes the United States of America, by its attorneys, Troy Rivetti, Acting United States Attorney for the Western District of Pennsylvania, Soo C. Song, Eric G. Olshan, and Nicole Vasquez Schmitt, Assistant United States Attorneys for said district, Mary J. Hahn, Trial Attorney, Civil Rights Division, and Barry K. Disney and Aaron Stewart Trial Attorneys, Capital Case Section, and respectfully files this Notice of the United States' in opposition to the defendant's motion to strike Juror No. 119.

1. The United States reasserts its opposition to the defendant's motion to strike for cause Juror No. 119, a United States citizen of Chinese national origin. The defendant has put forward two bases for his motion: (1) the juror's language proficiency and "cultural issues;" and (2) the juror's responses to questions regarding the death penalty. See Tr. at 252.

2. Under 28 U.S.C. § 1865(a), Congress significantly circumscribed the circumstances under which a potential juror may be disqualified from service. 28 U.S.C. § 1865(a) (stating that the chief judge of a district, or the clerk where so authorized by the district jury plan, "shall determine solely on the basis of information provided on the juror qualification form and other competent evidence" whether a person is unqualified or exempt from jury service).  With respect to language, the only bases on which a juror can be struck as unqualified is where the juror

1

"is unable to read, write, and understand the English language with a degree of proficiency sufficient to fill out satisfactorily the juror qualification form," see 28 U.S.C. § 1865(b)(2) (emphases added), and "is unable to speak the English language," see id. § 1865(b)(3) (emphasis added). "The enumerated exceptions to a juror's qualifications were intended by Congress to be exclusive." United States v. Pellegrini, 441 F. Supp. 1367, 1370-71 (E.D. Pa. 1977), aff'd, 586 F.2d 836 (3d Cir. 1978) (citing H.R. Rep. No. 1076, 90th Cong., 2d Sess. 13 (1968)). These standards have been adopted to assure that, "in accordance with the federal policy articulated in 28 U.S.C. § 1861, jurors represent a fair cross section of the community." Pellegrini, 441 F. Supp. at 1370-71.

3. There is no serious question, and the defendant has not argued otherwise, that Juror No. 119 more than satisfies the requirement that she be able to read, write, and understand the English language. Before Juror No. 119 appeared for in-person voir dire, she completed an extensive written questionnaire, in which she answered numerous questions, many of which requested narrative responses, which she provided. Her questionnaire also indicates that she served as a paralegal for a law firm in Pittsburgh for 24 years, where she worked preparing legal documents. During in-person voir dire, she often took the time to read and review her written questionnaire to confirm, or clarify, her written responses.

4. Throughout her voir dire examination on April 26, 2023, Juror No. 119 exhibited tremendous proficiency in understanding English, providing long narrative responses about nuanced legal issues and clearly articulating a wide range of thoughts and opinions on complex issues.

5. When the Court asked her questions, the juror's responses indicate a fulsome understanding of the questions asked, and she provided full and complete narrative answers to the

Court's questions. None of the juror's responses exhibit a disconnect between the Court's questions and the juror's responses.

6.  For example, when asked about her questionnaire response indicating that she had not heard of this shooting, she confirmed that she had not heard anything about this case and that in 2018, when the shooting took place, she was traveling internationally. She also clarified that she had heard of shootings at a church and at a school, but had never heard of a shooting involving Jewish victims. See Tr. at 234. When the juror explained that she thought her education in the law would help her to serve as a juror, because she may understand legal requirements better than other jurors, the Court stated, "I understand what you are saying." See Tr. at 233.

7.  Likewise, this juror carefully and appropriately responded to the government's questions. For example, when asked if she was aware she could be recused for age, she clearly stated that she was aware and chose to serve.

8.  Even during the questioning by the defendant's counsel, there is a single instance where the juror seemed to have misheard or misinterpreted counsel's question. When defense counsel asked her "when" she graduated from school, she answered "China, Shanghai." This easily could have been due to a mishearing of "when" for "where." And when he asked what year she "finished schooling," she responded with a detailed answer, stating that it was "complicated" and indicated that there were breaks in her education before she formally took examinations and gave her age upon graduation from law school.[1] She then requested clarification about what

---

[1] Although counsel for the government professes no expertise regarding the educational system in China in the 1970s, unlike the educational system in the United States, it appears that China does not require graduation from a specialized school of law; rather, students may begin studies in law in college, engage in apprenticeships, and then take a national examination. Study Law in China 2023 (lawstudies.com). In this context, the juror's response was an appropriate response to the defendant's counsel's questioning.

counsel wanted to know, and in direct response to her question—"first of all, when did you finish the education?"—she immediately and directly responded: "1983."

9. She also gave thoughtful and comprehensive responses about her reasons for her support of the death penalty (i.e., too much gun violence and the need for deterrence), and her belief that imprisonment may not be a sufficient judgment under specific circumstances.

10. Moreover, although this juror, like others who have been questioned, spoke quickly and with an accent, it is notable that there were only a few times that the court reporter—who has produced a full transcript of the juror's responses—requested her to repeat her answers. Throughout the voir dire process, many jurors expressed confusion by counsel's questions, were requested to clarify their responses, or were requested to speak louder or more clearly (as were both defense counsel and the prosecution, at various times).

11. Juror No. 119's answers were in no way contradictory. In response to questioning by the Court, the juror very thoughtfully drew the distinction between her general opinions about the death penalty—about which she openly admitted her support both during voir dire and on her questionnaire—and how she would approach being a juror in a hypothetical case. There is nothing inconsistent in this response.

12. Specifically, when asked about her responses to questions 73 and 74, she stated very clearly that her responses distinguished between what she believes the law allows (i.e., she is a 10 in favor of the death penalty where the law allows it), and what opinion she, sitting as a juror, would have about the hypothetical case described in Question 74. Tr. at 235.

13. The Court responded: "Understood. You just described—I think you said in 73—actually, it's 74 where you say you have no definite opinions, right?" The juror then stated, "Yes, I need to hear the whole picture." Id.

14. Thus, throughout the Court's colloquy with this juror, the juror provided responses and the Court indicated understanding of the juror's responses.

15. Despite counsel for the defendant's suggestion that there was a discrepancy between her clear <u>general</u> support for the death penalty, and her response to Question 74, there was no discrepancy whatsoever. <u>Numerous</u> other jurors, both in their questionnaire responses and in response to questions about how they would approach the hypothetical situation of being jurors, drew similar distinctions between their general views about the death penalty and how they would approach a particular case scenario. There is no reason to presume that this juror's clarification of her general support for the death penalty and her need to know all of the relevant information if she were a juror in a case as described in Question 74 was the result of "language or cultural issues." Tr. at 253.

16. For the reasons stated above, the United States opposes the defendant's motion to remove Juror No. 119 for cause.

Respectfully submitted,

<u>Troy Rivetti</u>
TROY RIVETTI
Acting U.S. Attorney
PA ID No. 56816

s/Soo C. Song
SOO C. SONG
Assistant U.S. Attorney
DC ID No. 457268

s/Eric G. Olshan
ERIC G. OLSHAN
Assistant U.S. Attorney
IL ID No. 6290382

s/Nicole Vasquez Schmitt

NICOLE VASQUEZ SCHMITT
Assistant U.S. Attorney
PA ID No. 320316

s/Mary J. Hahn
MARY J. HAHN
Trial Attorney
Civil Rights Division
DC ID No. 500193

s/Barry K. Disney
BARRY K. DISNEY
Trial Attorney
Capital Case Section
KS ID No. 13284

s/Aaron J. Stewart
Aaron J. Stewart
Trial Attorney
Capital Case Section
OK ID No. 31721