IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>ROBERT BOWERS | Criminal No. 18-292 |

**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION FOR HEARING REGARDING THE ADMISSIBILITY AND SCOPE OF VICTIM IMPACT EVIDENCE (Doc. No. 1156)**

AND NOW comes the United States of America, by its attorneys, Troy Rivetti, Acting United States Attorney for the Western District of Pennsylvania, Soo C. Song, Eric G. Olshan, and Nicole Vasquez Schmitt, Assistant United States Attorneys for said district, Mary J. Hahn, Trial Attorney, Civil Rights Division, and Barry K. Disney and Aaron J. Stewart, Trial Attorneys, Capital Case Section, and respectfully submits its opposition to the defendant's Motion for Hearing Regarding Admissibility and Scope of the Government's Proposed Victim Impact Evidence, Doc. No. 1156.

**INTRODUCTION**

This is now the third time the defendant has sought to require the United States to provide a preview of its anticipated victim impact evidence. This Court and Judge Ambrose have repeatedly denied the defendant's prior motions on this subject. As this Court held just a few months ago when denying the defendant's request for "materially similar relief" that Judge Ambrose previously, and summarily, rejected, "Defendant's Motion seeks advance production of the evidence that the Government will rely upon in attempting to prove aggravating factors at a potential penalty phase in this matter. Because Defendant is not entitled to such a production, the Court will deny his Motion." Doc. No. 893 at 4-5. In this latest motion, the defendant now goes

one step further and makes the extraordinary request for an evidentiary hearing to preview the government's evidence. The United States has already voluntarily produced interview reports for victims and other witnesses, including penalty phase witness statements related to victim impact, thereby providing the defendant with far more detailed notice of the expected testimony than what he is entitled to receive. This Court should deny the defendant's motion, which is essentially a restyled, expanded motion for the same relief that this Court has already denied.

## PROCEDURAL HISTORY

On August 26, 2019, the United States provided notice that it would present victim impact evidence during the penalty phase of the defendant's trial. Doc. No. 86 at 3-5. On December 18, 2019, the defendant moved for an informative outline of the government's aggravating factors. Doc. No. 157. In that motion, the defendant asked the Court to order the government to outline the type and scope of victim impact testimony it intended to present. Id. at 13-15. The United States opposed that request, arguing that "[v]ictim impact evidence is, unlike many other aggravating factors, by nature, deeply, uniquely personal, testimonial and dynamic. An informative outline of victim impact evidence would be fundamentally unfair and traumatic to impact witnesses, and amount to early production of witness statements in contravention of the Jencks Act." Doc. No. 178 at 33. The United States also demonstrated that production of victim impact evidence at that time was unnecessary, as the defendant was adequately informed of the nature and scope of such evidence. Id. at 30-31. On February 25, 2020, Judge Ambrose denied the defendant's motion, agreeing that the "Government's filings are sufficient to give the Defendant the required notice." Doc. No. 205.

The defendant tried again to obtain further details about the United States' potential victim impact evidence in December 2022 via a Motion to Set Deadline for Completion of Production of

Discovery Related to Victim Injuries. Doc. No. 900.[1] In that motion, the defendant sought discovery regarding surviving victim-related injuries. Id. at 4. The United States opposed that motion on the basis that neither the Federal Death Penalty Act ("FDPA") nor the Constitution requires disclosure of specific evidence supporting aggravator factors. Doc. No. 877 at 6-8. The Court again agreed and held that "the information sought by Defendant is material only to a potential penalty phase in this case, as it constitutes evidence that the Government may introduce in support of aggravating factors. Defendant is not entitled to the early production of such information under the Federal Rules, the FDPA, or the Constitution." Doc. No. 893 at 6.

The United States subsequently provided the defendant with a list of witnesses for both the guilt and penalty phases of trial and, on an ongoing basis, has been providing reports of interviews and victim Jencks statements to the defendant, even for potential penalty phase witnesses. As the Court has already concluded in this case, the government has provided more than adequate notice of the nature of victim impact evidence that will likely be offered and from whom.

Ignoring the Court's conclusions and rulings that the government's filings and disclosures are sufficient, the defendant again seeks unwarranted disclosures, but now asks the Court to participate by conducting a painstaking review of proposed victim impact testimony with an eye toward limiting its scope.

As discussed below, the defendant's assertions about the permissible scope of victim impact evidence are inaccurate. Further, it is unnecessary to require production of victim impact evidence and to prescreen that evidence. Finally, employing these invasive and burdensome procedures would violate the letter and spirit of the Crime Victims Rights Act ("CVRA"), 18

[1] The defendant's motion was originally filed as a sealed motion at Doc. No. 862. The Court subsequently ordered the defendant to file a redacted version and announced that, barring objection, the Court would unseal the government's response, the defendant's reply, and its order. Doc. No. 893 at 9. The defendant filed his redacted motion at Doc. No. 900. The defendant did not object to the Court unsealing the filings.

U.S.C. § 3771 (a)(8), which affords crime victims the right to be treated with fairness and with respect for their dignity and privacy. This Court should deny the motion.

## ARGUMENT

### I. Standards Governing Victim Impact Evidence

In Payne v. Tennessee, the Supreme Court rejected an earlier decision, Booth v. Maryland, and held that victim impact evidence does not violate a defendant's constitutional rights because it concerns "the victim and . . . the impact of the murder on the victim's family [and] is relevant to the jury's decision as to whether or not the death penalty should be imposed." 501 U.S. 808, 827 (1991) (overruling Booth v. Maryland, 482 U.S. 496 (1987)). In explaining its decision, the Supreme Court stated:

> We are now of the view that a State may properly conclude that for the jury to assess meaningfully the defendant's moral culpability and blameworthiness, it should have before it at the sentencing phase evidence of the specific harm caused by the defendant. "[T]he State has a legitimate interest in counteracting the mitigating evidence which the defendant is entitled to put in, by reminding the sentencer that just as the murderer should be considered as an individual, so too the victim is an individual whose death represents a unique loss to society and in particular to his family." . . . By turning the victim into a "faceless stranger at the penalty phase of a capital trial," . . . Booth deprives the State of the full moral force of its evidence and may prevent the jury from having before it all the information necessary to determine the proper punishment for a first-degree murder.

Payne, 501 U.S. at 825.

Consistent with Payne, the FDPA explicitly authorizes victim impact evidence during the sentencing phase of a capital trial. 18 U.S.C. § 3593(a). "There is no reason to treat such evidence differently than other relevant evidence." Payne, 501 U.S. at 827. Under the Due Process Clause, victim impact evidence is subject to exclusion only when it is so unduly prejudicial that its admission would render a defendant's trial fundamentally unfair. Id. at 825. It is likewise subject

to exclusion under the FDPA when its probative value is outweighed by the danger of creating unfair prejudice. 18 U.S.C. § 3593(c).

**1. The United States may present broad evidence of the victims' lives and characteristics.**

The United States may appropriately adduce broad evidence of the victims' lives and characteristics as people, as well as the impact of their loss on their relatives, friends, and colleagues. The government is not, as the defendant suggests, limited to a "quick glimpse" of the victims' lives. That phrase, as it appeared in Payne, concerned the problems with limits on victim-impact evidence mandated by earlier case law. Read in that context, the phrase does not imply that the Supreme Court intended to prohibit a complete exploration of victims' personal characteristics. Quite the opposite—the Payne opinion used this phrase to criticize Booth v. Maryland, noting:

> This misreading of precedent in Booth has, we think, unfairly weighted the scales in a capital trial; while virtually no limits are placed on the relevant mitigating evidence a capital defendant may introduce concerning his own circumstances, the State is barred from either offering "a quick glimpse of the life" which a defendant "chose to extinguish," Mills v. Maryland, 486 U.S. 367, 397 (1988) (Rehnquist, C.J., dissenting), or demonstrating the loss to the victim's family and to society which has resulted from the defendant's homicide.

Payne, 501 U.S. at 822. Thus, as used in Payne, the phrase does not imply any limit on the evidence that the United States could present at trial.

In fact, the phrase originated in a dissenting opinion that criticized the vacatur of a death sentence on the basis of instructional error. See Mills, 486 U.S. at 384. The dissent went on to address the case's second issue: a claim of improperly admitted victim-impact evidence. Id. at 395-96. The dissent described the contested evidence as "[a]t most . . . [giving] the jury a quick glimpse of the life petitioner chose to extinguish." Id. at 397. The dissent criticized Booth as wrongly decided but also found its reasoning did not require exclusion of the evidence, which

"gave only the barest of details about [the victim]." Id. at 397-98. Accordingly, the phrase "quick glimpse" originated as a description of evidence that would evade the strictures of Booth, not define the scope of admissibility under Payne.

Under Payne, impact testimony frequently incorporates extensive facts about the victims' lives. For example, in United States v. Roof, the district court admitted, and the Fourth Circuit affirmed, evidence that established the impact of the victims' deaths on their families, friends, and targeted religious community, as well as the "uniqueness" of each of the nine deceased victims, including their exemplary qualities (e.g., singing, preaching, and deep devotion to their faith). 10 F.4th 314, 377 (4th Cir. 2021).

In United States v. Barnette, the Fourth Circuit affirmed the admission of testimony from seven witnesses. 211 F.3d 803, 818 (4th Cir. 2000). They presented accounts of the victims' childhoods and family experiences, in addition to testimony about the trauma and sadness occasioned by the deaths. Id. In rejecting a challenge to the evidence, the court noted, "No case has come to our attention in which this court or the Supreme Court has vacated a sentence because victim impact evidence violated the limits of due process." Id.

**2. Friends and colleagues can testify about victim impact**

Victim impact evidence is not the sole province of close relatives. It may properly remind the jury that "the victim is an individual whose death represents a unique loss to society and in particular to his family." Payne, 501 U.S. at 825 (emphasis added); see also 18 U.S.C. § 3593(a) (noting that "any other relevant information" may be included as an aggravating factor). In keeping with Payne's holding that victim impact evidence is not limited to family members only, numerous circuit courts have affirmed presentation of victim impact evidence through non-relatives. See, e.g., United States v. Whitten, 610 F.3d 168, 187-88 (2d Cir. 2010); United States

v. Bolden, 545 F.3d 609, 626 (8th Cir. 2008); United States v. Fields, 516 F.3d 923, 946 (10th Cir. 2008); United States v. Barrett, 496 F.3d 1079, 1099 (10th Cir. 2007); United States v. Nelson, 347 F.3d 701, 713-14 (8th Cir. 2003); United States v. Bernard, 299 F.3d 467, 478 (5th Cir. 2002); United States v. Battle, 173 F.3d 1343, 1348-49 (11th Cir. 1999). In United States v. Con-Ui, for example, the Middle District of Pennsylvania determined that "the Constitution allows evidence from non-family members about their own grief and about the loss felt by other non-family members." Cr. No. 3:13-123, 2017 WL 783437, at *10 (M.D. Pa. Mar. 1, 2017) (quoting Whitten, at 188).

In the face of this overwhelmingly consistent jurisprudence, the defendant cites a reference to "family" from Payne, an unreported district court case, a handful of a state cases, and a single opinion from the Tenth Circuit. As noted above, Payne itself did not limit victim impact evidence to family members only, and federal appellate courts have consistently interpreted Payne to embrace victim impact testimony by non-family members. The defendant's citation to the Tenth Circuit's opinion in Fields is also particularly unhelpful to his argument, as the court explicitly affirmed the admission of victim impact evidence from friends. See Fields, 516 F.3d at 946-47.

Moreover, the Fields discussion about the impact on the community relates only to the impact on the community at large, i.e., those who were not "closely or immediately connected to the victim," because such impersonal community impact testimony implicates "generalized notions of social value and loss." Id. at 947. Fields, however, has no bearing where the victims have close ties to members within the community.[2] For example, as the Fourth Circuit held in Roof, a case involving a mass shooting at a house of worship, "[t]hat some of the victim-impact

[2] Such is the case here. The United States anticipates offering victim impact evidence only from witnesses who maintained close, personal connections to the deceased victims—as opposed to "generalized" familiarity or attenuated community connections.

evidence implicates . . . the impact of the victims' deaths on the targeted religious community is to be expected where [the defendant] intentionally targeted a church and selected Mother Emanuel's Bible-study group. He specifically chose as his victims individuals whose occupations, volunteer work, and daily activities naturally involved their faith and [their house of worship]." 10 F.4th at 377. As in Roof, this defendant specifically selected a house of worship, the Tree of Life Synagogue, as the site of his attack, and the impact of the victims' deaths upon that targeted community is directly relevant to the impact of the loss created by this defendant's own conduct.

The defendant's remaining citations to non-binding state courts and the unpublished decision in United States v. Shakir, Cr. No. 3:98-00038 ECF No. 3178 at 4 (M.D. Tenn. Apr. 2, 2008), offer little in the way of persuasion. Indeed, the district court in Shakir conceded that "there may be instances in which victim impact testimony is appropriate from a non-family member." Id. The defendant's unpersuasive authorities cannot overcome the bulwark of federal appellate precedent authorizing the government to present victim impact evidence through non-family members.

**3. Victim impact evidence contemplates emotion as well as fact.**

Victim impact evidence need not be unemotional: "The Eighth Amendment . . . permits capital sentencing juries to consider evidence relating to the victim's personal characteristics and the emotional impact of the murder on the victim's family in deciding whether an eligible defendant should receive a death sentence." Jones v. United States, 527 U.S. 373, 395 (1999) (citing Payne, 501 U.S. at 827). "Victim impact evidence cannot be divorced from all emotion. Some emotion is 'part and parcel' of that type of evidence." United States v. O'Driscoll, Cr. No. 4:01-277, 2003 WL 1401819, at *3 (M.D. Pa. Jan. 10, 2003). Nor does its poignancy render it

inadmissible or improperly prejudicial. See United States v. McVeigh, 153 F.3d 1166, 1221 (10th Cir. 1998).

Because the consequences of a crime are important considerations in the moral equation underlying the jury's capital sentencing determination, the United States can present testimony demonstrating the harm caused by a defendant's actions. Id. at 1217. A dispassionate prosecution of heinous crimes cannot be expected, let alone required. Id. at 1221 (citing Williams v. Chrans, 945 F.2d 926, 947 (7th Cir. 1991)). Consistent with the government's latitude to present appropriately emotional evidence, courts are reluctant to conclude that emotional testimony will necessarily prejudice a properly instructed jury to whom the defendant has the opportunity to present mitigation. See Whitten, 610 F.3d at 191; see also Nelson, 347 at 713 (discussing how the presentation of mitigating factors reduces the risk of jury prejudice from victim impact evidence).

The defendant argues that the Court should limit victim impact evidence to a factual description devoid of "emotional pleas" (Doc. No. 1156 at 11). But he marshals little supporting authority to support his position. He cites United States v. Glover, 43 F. Supp. 2d 1217, 1236 (D. Kan. 2006), for the proposition that testimony should be "factual not emotional." Doc. No. 1156 at 11-12. But this district court opinion, which offered no supporting analysis, predated by three months the Supreme Court's decision in Jones, which explicitly recognized that capital juries could consider the emotional impact of a murder. Jones, 527 U.S. at 395. Glover is therefore bad law.

The defendant also cites United States v. Sampson, an opinion that refers to a prohibition on "mere emotional plea[s]," but held only that victim impact evidence must relate to the effect of the crime; the district court in Sampson did not categorically prohibit emotional testimony. 335 F. Supp. 2d 166, 187 (D. Mass. 2004). The defendant's remaining authority—citations to state cases—provide limited utility in the face of countervailing federal decisions. The Court should

therefore reject the defendant's argument that victim impact testimony must be sterile and unemotional.[3]

## II. Testimony from Surviving Victims Should Not Be Limited to the Impact of their Physical Injuries

Although this Court has held that the United States may demonstrate harm to surviving victims as a non-statutory aggravating factor. See United States v. Bowers, 498 F. Supp. 3d 741, 755 (W.D. Pa. 2020), the defendant now seeks to limit that evidence to the physical impact of the crimes on the surviving victims. His proposed limitation is improper.

Under the FDPA, the United States may present "any information relevant to an aggravating factor for which notice has been provided," so long as the probative value of that evidence is not outweighed by the danger that it would create unfair prejudice. 18 U.S.C. § 3593(c). The government has alleged that the defendant "caused serious physical and emotional injury, including maiming, disfigurement, permanent disability, severe psychological impacts, and grievous economic hardship to individuals who survived the offense." Doc. No. 86 at 4-5. Consistent with the latitude afforded by § 3593(c), the United States may present evidence to support that factor.

The defendant's cited authority is inapposite. It offers limited support for the proposition that "victim impact evidence" does not encompass evidence from surviving victims. See Sampson, 335 F. Supp. 2d at 193 (FDPA does not make an express allowance for victim impact testimony for victims who are not the subject of a capital charge); Shakir, No. 3:98-00038 ECF No. 3178 at 2-3 (same). But those cases do not address a situation in which the United States has actually alleged harm to survivors as a separate aggravating factor.

---

3 Notwithstanding the permissible breadth of victim impact evidence, it is not without limitation. Victims may not testify to their "opinions about the crime, the defendant, and the appropriate punishment." Bosse v. Oklahoma, 580 U.S. 1, 3 (2016). The United States has no intention of eliciting such impermissible testimony.

Because the language of the FDPA is inclusive, not exclusive, see Whitten, 610 F.3d at 188, this Court should reject the defendant's ad hoc, unsupported limitations on an aggravating factor this Court has already upheld. To merit the exclusion of the evidence, the defendant must demonstrate that it creates a danger of unfair prejudice that outweighs its probative value. He cannot meet that standard simply by observing that the evidence relates to non-physical harms, and the Court should reject any such blanket argument.

### III. There Is No Basis to Conduct an Evidentiary Hearing During Which the Government Would Be Required to Preview Anticipated Victim Impact Evidence

Finally, the defendant asks the Court to put itself and the government through a burdensome process for previewing the victim impact evidence. Doc. No. 1156 at 24-25. He specifically requests that the government produce a written description of each witness's proposed testimony in anticipation of a hearing on admissibility. Id. at 25-26. Such a preview of sensitive, private evidence would be an affront to the victims' statutory rights to fairness and respect for their dignity and privacy. 18 U.S.C. § 3771(a)(8).

The defendant's motion is essentially a thinly veiled motion for reconsideration. The defendant has already unsuccessfully sought an outline of the government's penalty phase presentation, including its victim impact evidence. See Doc. Nos. 157 and 205. The Court held that the defendant had sufficient notice (Doc. No. 205), and he offers no compelling reason to abandon that ruling. The Court also barred the defendant's subsequent attempt to obtain specific discovery about surviving victim-related injuries. Doc. No. 893. This Court need not alter its previous rulings and preemptively consider the admissibility of victim impact evidence. Such testimony should not be treated differently than other relevant evidence. See Payne, 501 at 827.

First and foremost, the procedure the defendant envisions will work a significant hardship on victims and victims' family members who intend to present evidence during the penalty phase. Those individuals possess enforceable rights, including specific rights as to notice, attendance, and participation in the federal criminal justice process. 18 U.S.C. § 3771(a). They are also entitled to "[t]he right to be treated with fairness and with respect for the victim's dignity and privacy." 18 U.S.C. § 3771(a)(8).

As the United States has noted previously:

> Victim impact and injury evidence is by its nature painful, sensitive, private, and dynamic. Forcing victims to produce documentary evidence of their physical, psychological, emotional, financial, and other injuries to accommodate an artificial and legally unjustified deadline proffered by the defendant would be fundamentally unfair and incongruous with the aims of the CVRA. See United States v. McCluskey, Cr. No. 10-2734, JCH, 2013 WL 12330210, at *4 (D.N.M. June 11, 2013) (court would not "require the victims to 'repeatedly relive their loss,' nor to 'write out their testimony for preapproval, nor otherwise deliver scripted testimony'") (quoting United States v. Lujan, Cr. No. 05-934, 2010 WL 11546103, at *5 (D.N.M. Nov. 30, 2010)).

Doc. No. 877 at 9. Requiring surviving victims and deceased victims' families to endure the painful experience of "repeatedly reliv[ing] their loss" is completely at odds with treating victims with fairness and respecting their "dignity and privacy." It instead protracts an already traumatic process.

Nor is such a process even necessary in this case. The Court has already held that the defendant has adequate notice to prepare his defense for the penalty phase. And as the Court observed in its denial of the defendant's earlier motion for discovery:

> the Defendant will eventually receive existing witness statements, notice as to the witnesses that will potentially testify in this matter, and production of any exhibits (presumably including any medical records) that the Government will seek to introduce during both the guilt phase and the penalty phase in this matter. While the Court has ordered briefing on the timing of such exchange, the Court notes that the Government's proposal for its provision of its exhibit list was unopposed by Defendant, and the same would result in the Defendant receiving relevant records

> well in advance of a potential penalty phase in this matter. Accordingly, and in any event, the Court perceives no prejudice to Defendant as a result of the Court's denial of Defendant's present Motion.

Doc. No. 893 at 8. The United States has adhered to the Court's disclosure orders in this case, and has provided exhibit and witness lists, medical records, and reports of interviews and victim Jencks materials, even for potential penalty phase witnesses. The defendant is hardly at a loss for information as to the government's victim impact evidence.

Because the requested procedures unduly intrude on the rights of victims, and because the procedure is ultimately unnecessary, this Court should follow the example of the many district courts that have rejected invitations to evaluate victim impact testimony ahead of trial. See United States v. George, 477 F. Supp. 3d 532, 546 (E.D. La. 2020) ("Gatekeeping is the Court's prerogative, not defendants'. If defendants disagree with any of the Court's evidentiary determinations, then defendants may object during trial."); United States v. Cooya, Cr. No. 4:08-70, 2011 WL 5878382, *2 (M.D. Pa. Nov. 23, 2011) ("[d]efendants are not entitled to the Government's litigation playbook"); Lujan, 2010 WL 11546103, at *5 (deciding not to make the victim's "family members write out their testimony for preapproval, nor otherwise deliver scripted testimony."); United States v. O'Reilly, 545 F. Supp. 2d 630, 641 (E.D. Mich. 2008) (holding pretrial hearing was "unnecessary"); United States v. Solomon, 513 F. Supp. 2d 520, 539 (W.D. Pa. 2007); United States v. Williams, Cr. No. S100-1008 (NRB), 2004 WL 2980027, *23 (S.D.N.Y. Dec. 22, 2004), aff'd, 506 F.3d 151 (2d Cir. 2007) (denying defendant's motion for discovery and detailed statements regarding victim impact evidence); see also United States v. Taylor, 316 F Supp.2d 730, 738 (N.D. Ind. 2004) (denying motion to strike notice of intent, noting that "determination as to whether [aggravating] factor can be properly applied to either Defendant must await factual development at trial").

Although a limited number of courts have ordered review of written victim impact statements, this minority view is unpersuasive. For example, the parties in United States v. Henderson agreed that the government would submit witness statements for review, and the court made no independent assessment of whether such an arrangement was required. 485 F. Supp. 2d 831, 849 (S.D. Ohio 2007). That district court merely ratified the parties' agreement. The court in United States v. O'Driscoll noted that the defendant had failed to show that the Notice of Intent (NOI) was not sufficient to permit the defendant to "undertake an investigation and prepare a defense." 203 F. Supp. 2d 334, 341 (M.D. Pa. 2002). But noting "an abundance of caution," it ordered written summaries of victim impact testimony akin to those in Glover, 43 F. Supp. 2d at 1235-36.[4] O'Driscoll, 203 F. Supp. 2d at 341. In any event, these cases ordering written summaries of victim impact statements are entirely inapposite here, as the government has already voluntarily provided written summaries of witness statements, including statements by the deceased victims' family members.

These rare exercises of judicial discretion do not justify such caution in this instance, particularly when weighed against the responsibility for the Court to "ensure that the crime victim is afforded the rights" contained 18 U.S.C. § 3771(a). More than 30 years after the Supreme Court decided Payne, the defendant cannot cite a single case in which the United States adduced victim impact evidence that unfairly prejudiced a death sentence. Rather, he outlines at length the types of evidence the government intends to introduce (Doc. No. 1156 at 29-33) while simultaneously claiming ignorance of the prosecution's plans (Id. at 31). Having failed to demonstrate a need for an evidentiary preview, the defendant asserts without any substantiation that the government's

---

[4] As explained above, Glover (which stated that testimony should be "factual not emotional") predated the Supreme Court's holding in Jones, 527 U.S. at 395, which explicitly recognized that capital juries could consider the emotional impact of a murder.

evidence will "exceed constitutional and statutory bounds in multiple respects." Id. at 33. He offers no support for that conjecture other than his legally flawed claim that the government may only provide a "brief glimpse" of the victims. Id. at 11.[5]

In fact, the United States has substantial experience in the presentation of lawful, appropriate victim impact evidence in cases similar to the instant prosecution. See, e.g., Roof, 10 F.4th at 377-78 (upholding the presentation of victim impact evidence in a case involving the racially motivated murder of nine black church goers); United States v. Tsarnaev, 968 F.3d 24, 80-81 (1st Cir. 2020) (upholding the admission of impact testimony of multiple survivors of a bombing at the Boston Marathon); McVeigh, 153 F.3d at 1221 (holding in a bombing case that resulted in 168 fatalities that "a substantial amount of victim impact testimony reflecting the magnitude of such a large-scale crime" did not violate Payne). The defendant's unfounded accusations of speculative misconduct fail to provide any support for his request that this Court conduct an intrusive and legally groundless preview of the victim impact evidence. See, e.g., George, 477 F. Supp. 3d at 546; Solomon, 513 F. Supp. 2d at 539.

## CONCLUSION

For the reasons discussed above, the United States respectfully requests that the Court again deny the defendant's motion for a pretrial preview of the United States' victim impact evidence.

Respectfully submitted,

TROY RIVETTI
ACTING UNITED STATES ATTORNEY

[5] In contrast to the presumptuous examples the defendant cites, (see Doc. No. 1156 at 2, 7, 13, and 33), the government's victim impact evidence will not involve anything similar to lengthy video compilations of pictures and videos of the deceased victims' lives that other courts have found objectionable. Rather, the United States anticipates that the vast majority of the victim impact testimony will be offered by close family members, friends, or colleagues, either in person or by video, and with the aid of still pictures, short (non-compilation) videos of discrete events, and important artifacts from their lives.

s/Troy Rivetti
TROY RIVETTI
Acting U.S. Attorney
PA ID No. 56816

s/Soo C. Song
SOO C. SONG
Assistant U.S. Attorney
DC ID No. 457268

s/Eric G. Olshan
ERIC G. OLSHAN
Assistant U.S. Attorney
IL ID No. 6290382

s/Nicole Vasquez Schmitt
NICOLE VASQUEZ SCHMITT
Assistant U.S. Attorney
PA ID No. 320316

s/Mary J. Hahn
MARY J. HAHN
Trial Attorney
Civil Rights Division
DC ID No. 500193

s/Barry K. Disney
Barry K. Disney
Trial Attorney
Capital Case Section
KS ID No. 13284

s/Aaron J. Stewart
Aaron J. Stewart
Trial Attorney
Capital Case Section
OK ID No. 31721