IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT BOWERS | Criminal No. 18-292 |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION
TO SEAL NAMES AND ADDRESSES OF PROSPECTIVE AND ACTUAL JURORS
(Doc. No. 1199)**

AND NOW comes the United States of America, by its attorneys, Troy Rivetti, Acting United States Attorney for the Western District of Pennsylvania, Soo C. Song, Eric G. Olshan, and Nicole Vasquez Schmitt, Assistant United States Attorneys for said district, Mary J. Hahn, Trial Attorney, Civil Rights Division, and Barry K. Disney and Aaron J. Stewart, Trial Attorneys, Capital Case Section, and hereby files this response in opposition to defendant Robert Bowers's Motion for an Order Directing That the Names and Addresses of All Prospective and Actual Jurors Remain Sealed at Least Until the Entry of Any and All Verdicts (Doc. No. 1199).

The United States is mindful of the privacy interests of prospective jurors and strongly discourages any undue or unlawful exposure or harassment of jurors. If any specific issues of this nature were to arise in this case, the United States would seek to address those issues swiftly. This Court need not unilaterally disclose the names of jurors, however, in the absence of a motion by the public or the media seeking such disclosures. If such a motion is filed, the United States must seek to ensure that the procedures followed in this case comply with the district's Jury Plan and with the First Amendment. The United States submits this response to outline the law and authorities governing this Court's consideration of the disclosure of juror names.[1]

---

[1] There is no requirement under the Jury Plan for the disclosure of jurors' addresses, and, as more fully discussed below, the United States does not object to the nondisclosure of jurors' addresses.

The defendant has moved to seal the names and addresses of the jurors and prospective jurors until verdicts are returned. But the motion rests only on the fact that this case is high-profile and has attracted media coverage of jury selection. The defendant does not contend that there is any risk of jury tampering, media harassment of jurors, or other improper influences on deliberations. This district's Jury Plan therefore prevents the Court from sealing the names: under that plan, the Court may keep juror names confidential only "when the interests of justice so require," which has not yet been established in this case. The defendant also has no constitutional right to sealing under the Fifth, Sixth, and Eighth Amendments. Finally, the defendant has not made any showing that could overcome a media organization's right of access to the names under the First Amendment and United States v. Wecht, 537 F.3d 222 (3d Cir. 2008), should such an organization intervene.

## BACKGROUND

On May 8, 2023, two weeks after the start of jury selection, the defendant moved to seal "the names and addresses of all prospective and actual jurors" "at least until the entry of any and all verdicts." Doc. No. 1199 at 1. The defendant's motion acknowledged that the Third Circuit has ruled in Wecht that the public and the media have "a presumptive First Amendment right of access" to the names of trial jurors and prospective jurors. Id. at 8 (quoting Wecht, 537 F.3d at 235). Nevertheless, the defendant argued that "Wecht imposes no impenetrable barrier" to his requested relief. Id. at 11. Although the defendant noted in passing that he brought his motion "pursuant to the Fifth, Sixth, and Eighth Amendments to the United States Constitution," id. at 1, the remainder of his motion did not specify any legal basis for his requested relief.

As support for his requested relief, the defendant described the media interest in this case to date, including the ongoing coverage of the jury selection process. Id. at 2-6. The defendant

also noted that the Court and the parties have referred to prospective jurors by their juror number, not by name, during the voir dire process. Id. at 1-2. The motion did not allege evidence of a risk that harassment, threats, or intimidation will be directed toward the trial jurors who are eventually chosen, or that any prospective jurors might reasonably fear such harassment or threats.

The motion also makes reference to the defendant's previous motion to transfer venue away from the Western District of Pennsylvania, which also raised claims under the Fifth, Sixth, and Eighth Amendments. Id. at 2 (citing Doc. No. 669). The United States opposed that motion, see Doc. Nos. 699, 710, and this Court denied the motion, finding that pretrial publicity was not so prejudicial as to prevent the empaneling of an impartial juror under reasonable voir dire procedures. See Doc. No. 711 at 3-5 (order).

## ARGUMENT

This Court should deny the defendant's motion insofar as it relates to the names of the jurors and prospective jurors, as the current record does not support such relief under the Jury Selection Plan of the Western District of Pennsylvania. The Fifth, Sixth, and Eighth Amendments also do not provide any basis for nondisclosure. And under Wecht, media organizations and the public would have a First Amendment right to access jurors' names should they intervene in this case.

**I. The Sealing of Juror Names Is Not in "the Interests of Justice" Under the District's Jury Selection Plan, and the Defendant's Motion Should Be Denied as to Juror Names.**

As a threshold matter, the request to seal jurors' names is barred by this Court's Jury Plan. See Plan of the United States District Court for the Western District of Pennsylvania for the Random Selection of Grand and Petit Jurors (Mar. 2, 2020) ("Jury Plan" or "Plan"), available at https://www.pawd.uscourts.gov/sites/pawd/files/Jury_Plan_Final_2020.pdf. Section 15(a) of the Jury Plan provides in part that "[n]ames drawn from the qualified jury wheel to serve as petit jurors

3

shall not be disclosed to the public or media until the jurors have been summoned and have appeared at the courthouse.  The Court in any case may order that the names be kept confidential when the interests of justice so require" (emphasis added).  Here, the defendant has not shown that the interests of justice require juror names to be kept confidential, and this Court therefore may not order those names to be sealed.

Under the Jury Plan, sealing the names of jurors and prospective jurors is the exception and not the rule: venirepersons' names may not "be kept confidential" without a court order and a finding that "the interests of justice so require."  Plan § 15(a).  This provision tracks the Jury Selection and Service Act, which also indicates that juror names normally are to be publicly disclosed.  Title 28, United States Code, Section 1863(b)(7) requires that each district's jury selection plan shall, among other things, "fix the time" when venirepersons' names "shall be disclosed to parties and to the public."  "If the plan permits these names to be made public, it may nevertheless permit" the court "to keep these names confidential in any case where the interests of justice so require."  Id.  Further, this Court's Local Rules do not indicate that the names of jurors or prospective jurors are ordinarily kept confidential.  See, e.g., W.D. Pa. L. Crim. R. 24.1 (allowing bar members to access the jury list).

Under these provisions, this Court may order the continued sealing of jurors' names only after finding exceptional, case-specific reasons to do so.  While neither this Court nor the Third Circuit has analyzed Section 15(a) of the Western District's Jury Plan, other Circuits have held that materially identical language in other districts' plans requires such a heightened showing—in cases that the defendant himself cites in support of his motion.  See Doc. No. 1199 at 9 & n.2, 14-15.  For example, in In re Globe Newspaper Co., the First Circuit considered the District of Massachusetts's jury selection plan, which provides that the court "may order that the names of

jurors remain confidential" after venirepersons appear in court (or fail to appear) "if the interests of justice so require." 920 F.2d 88, 92 n.4 (1st Cir. 1990) (quoting District of Massachusetts Plan for Random Selection of Jurors, § 10(c)). This "interests-of-justice exception" permitted the nondisclosure of juror names "only upon a finding of exceptional circumstances peculiar to the case," which could include a credible threat of jury tampering" or "a risk of personal harm to individual jurors" but not "the mere personal preferences or views of the judge or jurors." Id. at 97.

Similarly, in United States v. Blagojevich, 612 F.3d 558 (7th Cir. 2010), the Seventh Circuit considered a jury selection plan that provided that a court could order that juror names remain confidential only "if the interests of justice so require." Id. at 564. The Seventh Circuit explained that this plan and § 1863(b)(7) created a "presumption in favor of disclosure," to which sealing during trial was "an exception that needs justification," and that the plan's "'interests of justice' exception . . . implies a need for some procedure to make the necessary finding." Id. at 563, 564. To satisfy that exception, "a judge must find some unusual risk to justify keeping jurors' names confidential; it is not enough to point to possibilities that are present in every criminal prosecution," and even "great public interest" in a case does not necessarily "create exceptional risks." Id. at 565. Like the First and Seventh Circuits, this Court should interpret this district's "interests of justice" provision to require a showing of exceptional, case-specific risks before juror names may be kept confidential.

The Third Circuit's decision in Wecht, though it did not analyze the jury selection plan of this district or any other, adds additional support to this analysis. Wecht noted that permissive language in § 1863(b)(7)—"'[i]f the plan permits these names to be made public'"—was consistent with the Third Circuit's finding that a "strong tradition of juror name disclosure

5

existed," both when the statute was drafted in 1968 and in the present day. 537 F.3d at 236, 237. This tradition was equally compelling to the First Circuit in Globe Newspaper, which explained that its interpretation of "the 'interests-of-justice' standard" was supported by "the historic common law public character of criminal proceedings since the Norman Conquest in England." 920 F.2d at 93, 94.[2] In short, the Western District's "interests of justice" standard requires "a finding of exceptional circumstances" such as a risk of jury tampering or personal harm to jurors. Id. at 97.

The defendant has presented no evidence of such exceptional circumstances, and therefore has not established the requisite showing for this Court to find that the "interests of justice" require "that the names be kept confidential." Plan § 15(a). The defendant's motion does not suggest that the disclosure of jurors' names in this case is likely to lead to any improper outside influence on the jury. See Doc. No. 1199 at 1-6. Instead, the defendant references only the fact that the media has covered the jury selection process, see id. at 3-4, and that a recent newspaper editorial about this case "prompted diverse responses" in online comments. See id. at 4-6. But the defendant never explains how this coverage, which is common in high-profile cases, indicates a heightened risk of jury tampering or harm to jurors. High-profile media coverage, without more, does not indicate that reporters or any other people are likely to threaten or coerce jurors should their names be disclosed. By comparison, in other cases in which this Court has sealed jurors' names, specific facts or allegations gave rise to reasonable concerns that the defendant or his associates might threaten jurors. See United States v. Solomon, 387 F. App'x 258, 260-61 (3d Cir. 2010) (defendant

---

[2] At least one district court has found the nondisclosure of juror names to be in "the interests of justice" under its local jury selection plan, without analysis and without applying the heightened standard of Globe Newspaper. See United States v. Koubriti, 252 F. Supp. 2d 418, 422 n.2 (E.D. Mich. 2003). That out-of-circuit case is not binding on this court and is not persuasive. In any event, in this circuit, it would not be sensible to read a jury selection plan as setting a lower standard for the sealing of juror names than is required by Wecht, as that standard would always be overridden by the First Amendment claims of any media group that objected to sealing.

6

charged with contracting for murder to retaliate against victim's son, an informant); United States v. Miah, Crim. No. 21-110, 2021 WL 5815882, at *3 (W.D. Pa. Dec. 7, 2021), appeal docketed, No. 22-2983 (3d Cir. Oct. 21, 2022) (defendant charged with threats to federal officials). Nor does the defendant suggest that this Court would lack the ability to respond in the future in the unlikely event that jurors are faced with threats or coercion during trial.

The defendant's motion also refers to his prior motion to transfer venue, which this Court denied in March 2022. See Doc. No. 1199 at 2 (citing Doc. No. 669). In that prior motion, the defendant alleged that over 1,200 local media articles have been published about the charged crimes and that survey results showed that Pittsburgh Division residents were more familiar with the case than residents of other districts. Doc. No. 669 at 1-2, 11-19. This Court denied the motion to transfer venue, observing that the publicity—which had decreased since the attack in October 2018—"falls far short of the grossly damaging coverage present in cases in which a change of venue was constitutionally required." Doc. No. 711 at 4. Just as the pretrial media coverage does not suggest "that 12 impartial individuals could not be empaneled," Doc. No. 711 at 5 (quoting Skilling v. United States, 561 U.S. 358, 382 (2010)), it also does not suggest that the jurors would not remain impartial without the unusual and unwarranted measure of sealing the jurors' names. While sealing may be appropriate in other cases—and while a significant change in circumstances between now and the jury's empanelment could conceivably make sealing appropriate in this case—the current record does not show that sealing jurors' names is in the interests of justice.

Essentially, the defendant's motion argues that jurors' names should be sealed simply because this capital case is high-profile and has received significant media attention. But other courts have not found these facts sufficient to show that nondisclosure of juror names would be "in the interests of justice." The First Circuit recognized (in the tax conspiracy prosecution of a

prominent attorney and a reputed Mafia member) that jurors' "participation in publicized trials may sometimes force them into the limelight against their wishes." Globe Newspaper, 920 F.2d at 98. But neither the publicized nature of the trial, nor "the mere generalized privacy concerns of jurors," nor "the judge's general belief" in a policy of nondisclosure were "a sufficient reason for withholding [jurors'] identities under the interests-of-justice standard." Id. Elsewhere, in the corruption prosecution of the former governor of Illinois, the district court found that "justice require[d]" "preventative measures" such as the sealing of jurors' names. United States v. Blagojevich, 743 F. Supp. 2d. 794, 804 (N.D. Ill. 2010), on remand from 612 F.3d 558 (7th Cir. 2010). But the court did not rely on the "thorough and extensive" "international media coverage" of the case; instead, it explained that the number of unsolicited communications about the case received by the judge from by members of the public showed an extraordinary risk of outside influences on the jury should their names be publicized. Id. at 797-800, 802-03. That ruling, too, does not support a nondisclosure order in this case. Contra Doc. No. 1199 at 15-21.

Finally, the sealing of juror names is not in the interests of justice because this Court has taken, and can continue to take, many alternative measures to protect juror privacy and candor—including the instructions this Court has given to prospective jurors. Notwithstanding the defendant's intimation that this Court and the parties have assured venirepersons "that the privacy of juror names would be respected," Doc. No. 1199 at 2, the use of juror numbers in open court has not guaranteed any prospective juror that his or her name would never become public. Contra Doc. No. 1199 at 14. Quite the opposite: this Court has made a point of warning prospective jurors "that the voir dire process is generally an open public proceeding. And generally speaking, much of what you answer here today must be public." See, e.g., Apr. 25, 2023 Tr. at 17. To protect juror privacy, prospective jurors may (as this Court has informed them) ask for voir dire to proceed

in a closed session if they "believe that a question requires [them] to reveal particularly sensitive personal information in order to be truthful." Id.  The fact that very few venirepersons have availed themselves of this option suggests that more aggressive measures, such as the sealing of jurors' names, are not necessary to ensure candor during voir dire.

Even under the Jury Plan's default scenario, the names of jurors and prospective jurors will not be readily available on the docket.  "Any request for disclosure shall be made to the Court by written motion," limiting the number of recipients who can directly obtain the names.  Plan § 15(a).[3]  The same subsection states that this Court "may otherwise restrict the disclosure of juror information in accordance with local rules of court," id.—allowing this Court to place reasonable restrictions on movants' activities, such as forbidding any movant from contacting a trial juror until after the verdicts are returned.  See Doc. No. 1137 (Decorum Order) at 9-10 (strictly prohibiting "[a]ny attempt to contact or interact with jurors or potential jurors; a family member of a juror or potential juror; or an individual living in the same household as a juror or potential juror in any way . . . during voir dire and trial in this matter" and prohibiting communications with "selected jurors, including alternates, before the Court discharges the jury at the conclusion of the proceedings").  And this Court will retain ample authority to counteract threats or harassment of jurors during trial, should those unusual events occur.[4]  Because alternative measures are available, and for all the reasons given above, sealing the names of jurors and prospective jurors is not in the interests of justice on the record before this Court, and the Western District's Jury Plan thus impedes this Court from doing so.

---

[3]    It is conceivable that no requests for disclosure will be made, in which case the names will not be revealed.
[4]    For instance, in one case in which a juror reported mid-trial that she had been offered a bribe (and had told another juror of this), the Third Circuit found no error in the district court's decision not to declare a mistrial, but instead to sequester the jury and excuse the two affected jurors.  United States v. Claxton, 766 F.3d 280, 288-89, 299-300 (3d Cir. 2014).

**II. The Defendant Has No Constitutional Right Under the Fifth, Sixth, and Eighth Amendments to the Sealing of Juror Information.**

The defendant's motion states in passing that he seeks to seal the jurors' names "pursuant to the Fifth, Sixth, and Eighth Amendments," Doc. No. 1199 at 1, but he does not explain why he thinks that any of these amendments entitles him to sealing and overrides the provisions of the Jury Selection Plan.  The defendant cites no case holding that the Sixth Amendment's guarantee of an "impartial jury," or any other constitutional provision, requires the names of jurors to be sealed.  The Court and the parties have thoroughly questioned prospective jurors about their ability to be fair and impartial in this case, and as discussed above, this Court has alternative options to ensure an impartial jury.  As this Court found in denying the defendant's motion to transfer venue, Doc. No. 711, this Court should rule that the Fifth, Sixth, and Eighth Amendments do not entitle the defendant to the extraordinary relief he seeks.

The Sixth Amendment provides that "the accused shall enjoy the right to a speedy and public trial, by an impartial jury." U.S. Const. amend. VI.  But pretrial media coverage does not mean a properly chosen jury cannot be impartial: "Prominence does not necessarily produce prejudice, and juror <u>impartiality</u> . . . does not require <u>ignorance</u>."  Doc. No. 711 at 2 (quoting <u>Skilling</u>, 561 U.S. at 360).  Even in a highly publicized case that attracts significant media attention, the court "protects the defendant's Sixth Amendment right by ensuring that jurors have 'no bias or prejudice that would prevent them from returning a verdict according to the law and evidence.'"  <u>United States v. Tsarnaev</u>, 142 S. Ct. 1024, 1034 (2022) (quoting <u>Connors v. United States</u>, 158 U.S. 408, 413 (1895)).  As this Court found in denying the transfer motion, pretrial publicity in this case has not been so extreme that "any reasonably constructed, let alone even the most careful, voir dire process would be insufficient to ensure an impartial jury."  Doc. No. 711 at 5 (internal quotation marks omitted).

The defendant's motion does not explain why he thinks the disclosure of jurors' names would deprive him of an "impartial jury." In denying the transfer motion, this Court has found that a reasonable voir dire process in this district can meet the Sixth Amendment's requirement by ensuring that the jurors selected are able to render a verdict based solely on the law and evidence (and by excusing jurors who are not able to do so). It is not clear how such an otherwise "impartial" jury would be rendered "partial" solely by the release of juror names. The defendant's general discussion of pretrial media coverage, see Doc. No. 1199 at 2-6, does not suggest that the media or any member of the public have attempted to influence the prospective jurors or this Court, and does not suggest that such an attempt is likely. Nor does the defendant's motion identify any other way in which disclosure of juror names could render the jury less than "impartial" under the Sixth Amendment, such as evidence suggesting that jury tampering or harassment is foreseeable. Thus, even if the Sixth Amendment might require the sealing of juror names in some other case (a question this Court need not decide), the defendant has shown no facts supporting that finding here.

The defendant also does not argue that any case has found that the Sixth Amendment's guarantee of an "impartial jury" has required the sealing of jury names on facts comparable to those here. As the defendant notes, the First Circuit stated in passing in Globe Newspaper that disclosure of juror names "may implicate the defendant's Sixth Amendment right to a fair trial." Doc. No. 1199 at 9 n.2 (quoting Globe Newspaper, 920 F.2d at 94). But Globe Newspaper, again, found that the interests-of-justice exception in a jury plan required "a finding of exceptional circumstances peculiar to the case," 920 F.2d at 97, and the cases it cited on the Sixth Amendment suggested that outside influences on a jury could be counteracted by other, more targeted measures than the sealing of jurors' names. See Sheppard v. Maxwell, 384 U.S. 333, 362-63 (1966); In re

Globe Newspaper Co., 729 F.2d 47, 52-53 (1st Cir. 1984).  As for the defendant's other cited cases, the district court in United States v. Blagojevich based its sealing order on an interests-of-justice finding, not the Sixth Amendment.  See 743 F. Supp. 2d at 801; contra Doc. No. 1199 at 16.  And although the district court in United States v. Black found that "releasing juror names unnecessarily threatens Defendants' Sixth Amendment rights," the court based its ruling on its "discretion" rather than on any constitutional requirement and did not specifically analyze the Sixth Amendment right to an impartial jury.  483 F. Supp. 2d 618, 631 (N.D. Ill. 2007); contra Doc. No. 1199 at 16.

Beyond the Sixth Amendment, the defendant offers no reason to think that the Fifth or Eighth Amendment entitles him to the sealing of juror names, and the government's research has found no case supporting that argument.  While the Supreme Court has explained that "[d]ue process requires that the accused receive a trial by an impartial jury free from outside influences," Sheppard, 384 U.S. at 362, it has not suggested that the Due Process Clause requires the sealing of jurors' names to a greater extent than the Sixth Amendment does.  Nor has the defendant explained how the Eighth Amendment prohibition on "cruel and unusual punishments" is implicated by the disclosure of jurors' identities.  The defendant has no constitutional entitlement to seal jurors' names, and this Court should deny his motion under the terms of the Jury Plan.

### III. The Effect of the Jury Plan Is a Separate Question from the Media's First Amendment Rights.

As the United States explained above, under the "interests of justice" standard of this district's Jury Plan, the Court may seal the names of jurors and prospective jurors only on a showing of case-specific exceptional circumstances such as a risk of jury tampering or threats, which the defendant has not made here.  However, regardless of this Court's interpretation of the Jury Plan, that question is independent of any analysis of the First Amendment rights of the public or media organizations.  As the defendant concedes, Doc. No. 1199 at 8, the Third Circuit held in

Wecht that the public has "a presumptive First Amendment right of access to obtain the names of both trial jurors and prospective jurors prior to empanelment of the jury." 537 F.3d at 235. Such a constitutional right, if raised by an intervening media organization or member of the public, would override any provision of the Jury Plan barring such access.

The First Amendment right described in Wecht is specific to the person raising it: for instance, a defendant may not raise a First Amendment claim when no member of the public has objected. E.g., United States v. Walker, 392 F. App'x 919, 925 n.7 (3d Cir. 2010); United States v. Miah, 2021 WL 5815882, at *2 n.4 (Hardy, J.). For that reason, neither the defendant nor the government has standing to raise a First Amendment objection under Wecht on behalf of media organizations that have not yet intervened, and this Court could not deny the defendant's motion in the current posture based directly on Wecht. But media organizations could foreseeably intervene in the near future and move under Wecht for access to the names of jurors and potential jurors. Because the First Amendment could eventually govern the release of juror names (as it could in any case), it is appropriate for this Court to consider Wecht in interpreting the "interests of justice" provision of the Jury Plan, and in exercising any remaining discretion the Court has under that Plan. See supra Part I n.1.

## IV. The Defendant Has Made No Showing That Would Overcome an Objecting Media Organization's First Amendment Rights Under Wecht to the Names of Jurors.

Although the United States does not have standing to raise the First Amendment rights of media organizations under Wecht, the defendant has made no showing that could satisfy Wecht's standard. Regardless of how this Court interprets the Jury Plan, it should therefore recognize that on the current record, the juror names cannot remain sealed if a media organization intervenes in this case and moves for access.

As mentioned, Wecht held that the First Amendment requires "presumptive public access to jurors' identities," "no later than the swearing and empanelment of the jury."  537 F.3d at 239. The Third Circuit conceded that, "in a given case, a risk of jury tampering or excessive media harassment may exist" and may override the First Amendment presumption of access.  Id.  But district judges must "address these risks on a case-by-case basis, and . . . make particularized findings on the record 'establishing the existence of a compelling government interest' and 'demonstrating that absent limited restrictions on the right of access, that other interest would be substantially impaired.'"  Id. (quoting United States v. Antar, 38 F.3d 1348, 1359 (3d Cir. 1994)).

Turning to the specific facts of Wecht, the court held that "[t]he prospect that the press might publish background stories about the jurors is not a legally sufficient reason to withhold the jurors' names from the public."  Id. at 240.  The record did not show "anything unusual about this case, aside from a locally prominent defendant, that makes the prospective jurors' hypothetical privacy concerns more compelling than usual."  Id.  The Third Circuit also rejected as insufficient the fact that the defendant in Wecht had "friends and enemies who might be inclined to influence jurors"—a situation that exists "in virtually every jury trial."  Id. at 241.  Wecht distinguished that "conclusory and generic" finding from a case in which an organized-crime defendant "had ordered 'several murders' (including those of a judge and a prospective witness), and had attempted to bribe judges," which provided "specific reasons" to anticipate attempts to threaten or bribe jurors. Id. (quoting United States v. Scarfo, 850 F.2d 1015, 1017 (3d Cir. 1988)).

Here, as in Wecht, the record reveals no "compelling government interest" that would be "substantially impaired" by the disclosure of the names of jurors and prospective jurors.  The defendant's motion refers to the "intense" media interest in this case, particularly in "the jury selection process and the opinions and characteristics of prospective jurors."  Doc. No. 1199 at 3.

But these facts suggest, at worst, that media outlets might "publish background stories" about the jurors, something that Wecht held the courts and the Government have no compelling interest in preventing. 537 F.3d at 240. The fact that publicity "has also focused on the propriety of the death penalty" in this case, Doc. No. 1199 at 4, likewise does not indicate any "risk of jury tampering or excessive media harassment" that could override the presumptive First Amendment rights of media organizations. 537 F.3d at 239. This is especially true given this Court's repeated admonitions to prospective jurors that they should not review any media reports about this case, and the responses by prospective jurors during voir dire, which demonstrate their conscientious adherence to this Court's order. Indeed, the defendant has never suggested that any such risk exists—and although he takes pains to explain that Wecht is not an "impenetrable barrier" to sealing jurors' names, Doc. No. 1199 at 11, he never directly addresses the Wecht standard. Doc. No. 1199 at 6-12.

The defendant's two proposed "compelling reasons" to seal the names, Doc. No. 1199 at 12, do not satisfy Wecht. First, the defendant states that "this is a capital case in which the need for juror impartiality and juror candor are of paramount importance." Doc. No. 1199 at 12. But the Third Circuit has never indicated that Wecht, or the First Amendment rights of the public or the media, applies differently to capital cases. The defendant's only cited case on this point is an out-of-circuit case that did not involve the First Amendment or jury anonymity at all, but instead involved false statements during voir dire by a juror in a capital trial. Sampson v. United States, 724 F.3d 150, 163 (1st Cir. 2013). That case observed in passing that "[t]he right to an impartial jury is nowhere as precious as when a defendant is on trial for his life," but that dictum in a nonbinding case does not change Wecht's application to capital cases. Second, this Court's statement to prospective jurors that "we will not identify you by name" during questioning, see

15

Doc. No. 1199 at 14, does not contradict the court's overall caution that voir dire "is generally an open public proceeding" and that "much of what you answer here today must be public." Apr. 25, 2023 Tr. at 17.[5] In any event, even if prior comments by a district court carry weight in a discretionary setting, cf. Blagojevich, 743 F. Supp. 2d at 805-06, they cannot override the First Amendment rights of the public or the media under Wecht.

Nor do other portions of the record, without more, satisfy the Wecht standard. Wecht indicated that the sealing of jurors' names would require "a risk of jury tampering or excessive media harassment," 537 F.3d at 239, and cases that have sealed jurors' names under that standard have all involved realistic fears that the defendant or his associates might threaten or intimidate jurors. See Walker, 392 F. App'x at 924-25 (defendant was charged with threatening witnesses and had made jail calls indicating a desire to intimidate jurors); Solomon, 387 F. App'x at 260-61 (defendant charged with contracting for murder to retaliate against an informant); Miah, 2021 WL 5815882, at *3 (defendant charged with threats to federal officials). Such fears have not yet manifested in this case. To date, only one prospective juror has articulated a particular fear of being harmed or threatened due to participation in the trial, and the parties agreed that that venireperson could be dismissed for cause. Apr. 25, 2023 Tr. at 262-65 (juror stated that "[p]eople who tend to commit these types of crimes in this type of violence tend to have friends").[6] As the

---

[5]   The defendant's motion also requests that the "addresses" of the jurors and prospective jurors remain sealed until the verdicts have been entered. Doc. No. 1199 at 22. The United States maintains respect for juror privacy under the law, and in its view, nondisclosure of jurors' addresses is permitted by this district's Jury Plan. The Plan does not specifically mention jurors' addresses; it mentions juror names but adds only that the court "may otherwise restrict the disclosure of juror information in accordance that local rules of court." Plan, § 15(a). Further, there is no apparent historical tradition of access to jurors' addresses, the information will contribute little to public confidence in the judicial system, and disclosure of addresses could more easily expose jurors to unwanted communications and attendant harms. Addresses also are not subject to the presumptive First Amendment right described in Wecht; there, the Third Circuit did not address the issue because media organizations were "not seeking access to the jurors' home addresses." 537 F.3d at 227 n.9. The Government thus has no objection to nondisclosure of the addresses of jurors and prospective jurors.

[6]   The United States takes seriously concerns that (as expressed by this prospective juror) the defendant may have friends or supporters who share his beliefs and who are willing to engage in further acts of violence against jurors, witnesses, or others. However, the defendant's motion does not invoke those concerns as a grounds for relief,

16

Third Circuit noted in Wecht, however, "almost all defendants have friends or enemies who might be inclined to influence jurors." 537 F.3d at 241. Reasons that would apply "in any high-profile case" cannot override the presumptive First Amendment right of access. Id. at 240 n.34.

Finally, this case does not satisfy Wecht because this Court has other means to protect the impartiality of the jury even "absent limited restrictions on the right of access" to jurors' names. Wecht, 537 F.3d at 239 (quoting Antar, 38 F.3d at 1359). Throughout the trial, this Court may take measures to deter and limit any improper influences—such as by giving curative instructions, or in extreme cases by excusing affected jurors or taking other targeted actions. Claxton, 766 F.3d at 299-300; United States v. Jones, 566 F.3d 353, 359 (3d Cir. 2009). The availability of these measures further shows that the defendant's speculation does not satisfy the Wecht standard. Thus, although the government does not have standing to raise the First Amendment rights of the media or the public, it is clear that the defendant has not yet made a showing sufficient to overcome a Wecht objection by any media organization that may intervene in the future.[7]

## CONCLUSION

While the United States strongly supports the need for potential jurors and seated jurors to avoid undue exposure and potential harassment, the defendant has not made the requisite showing

---

and no record of those concerns has been made for purposes of granting the defendant's motion. Should any instances of juror or witness harassment arise in the future, the United States will take immediate action to protect the integrity of the trial process, and will seek appropriate remedial measures from the Court.

[7]  As a final note, Wecht appears to require district courts to distinguish between the names of "jurors" and "prospective jurors" in any list of names. In the Wecht opinion (issued after its order resolving the appeal), the Third Circuit noted that "we anticipated that the District Court's disclosure would distinguish between the names of trial jurors and those of prospective jurors," implicitly criticizing the district court for not making such a distinction. 537 F.3d at 224 n.1. Wecht thus implies that any disclosure of the jurors' names must distinguish between trial jurors and prospective jurors who were not chosen as trial jurors. However, Wecht does not require that the names of trial jurors or prospective jurors be accompanied by their respective juror numbers, which might allow each venireperson to be matched with his or her in-court comments during voir dire.

to maintain the names of the jurors under seal based upon this district's Jury Plan and controlling Third Circuit authority.

    Respectfully submitted,

TROY RIVETTI
ACTING UNITED STATES ATTORNEY

s/Troy Rivetti
TROY RIVETTI
Acting U.S. Attorney
PA ID No. 56816

s/Soo C. Song
SOO C. SONG
Assistant U.S. Attorney
DC ID No. 457268

s/Eric G. Olshan
ERIC G. OLSHAN
Assistant U.S. Attorney
IL ID No. 6290382

s/Nicole Vasquez Schmitt
NICOLE VASQUEZ SCHMITT
Assistant U.S. Attorney
PA ID No. 320316

s/Mary J. Hahn
MARY J. HAHN
Trial Attorney
Civil Rights Division
DC ID No. 500193

s/Barry K. Disney
BARRY K. DISNEY
Trial Attorney
Capital Case Section
KS ID No. 13284