IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

ROBERT BOWERS

Criminal No. 18-292

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO CLARIFY ORDER AND COMPEL RECIPROCAL DISCOVERY (Doc. No. 1214)**

AND NOW comes the United States of America, by its attorneys, Troy Rivetti, Acting United States Attorney for the Western District of Pennsylvania, Soo C. Song, Eric G. Olshan, and Nicole Vasquez Schmitt, Assistant United States Attorneys for said district, Mary J. Hahn, Trial Attorney, Civil Rights Division, and Barry K. Disney and Aaron J. Stewart, Trial Attorneys, Capital Case Section, and respectfully submits this response in opposition to the defendant's Motion to Clarify Order and Compel Reciprocal Discovery. Doc. No. 1214.

After extensive briefing on myriad issues related to the defendant's notice under Rule 12.2 and the government's request to have the defendant examined by its experts, the Court entered a thorough and detailed memorandum opinion resolving the parties' many disputes and an Order setting clear parameters for the government-sponsored mental health examinations of the defendant. Doc. Nos. 1200 & 1202. Dissatisfied with this Court's rulings, the defendant has filed a motion purporting to seek "clarification" of the Court's Order. The substance of the motion makes clear that there is no genuine confusion as to the contents of the Court's Order, only disappointment with the outcome. That disappointment is no basis for the Court to reconsider its earlier conclusions. The Court should deny the motion.

I.     **The Court's Order Is Clear and Unambiguous as to the Permitted Scope of the Examinations.**

The defendant first seeks to conjure ambiguity where there is none regarding the scope of the examinations.  The Court's Order specifically allows government experts to question the defendant about his conduct "before and after committing the crimes, and any other matter as is necessary and probative to rebut or confirm the anticipated Defense expert mental health testimony."  Doc. No. 1202 at 2.  The defendant now asserts that he is unsure whether that scope includes inquiry into (1) "events or conduct subsequent to his arrest"; (2) "communications with his legal team, including the defense experts, or the contents of his Rule 12.2 supplemental notice"; (3) "communications with family members after his arrest"; and (4) "evidence that solely constitutes additional aggravating evidence."   Doc. No. 1214 at 2-3.  This request for "clarification" is nothing more than the defendant's attempt to circumscribe the scope of the examination already authorized by this Court.  It should be rejected.  The government's examiners must be able to exercise their professional judgment during the examination to determine what topics and questions are required to evaluate the defendant's mental status.

The plain language of the Court's Order clearly encompasses all types of questions the defendant raises.  Questions about "events or conduct subsequent to" the defendant's arrest obviously fall within the scope of questions about the defendant's "conduct before and after committing the crimes."  Questions about communications with his legal team and defense experts, as well as the contents of his Rule 12.2 supplemental notice, certainly relate to matters that are "necessary and probative to rebut or confirm" the defendant's planned mental health presentation.[1]

---

[1]     The defendant attempts to raise a specter of impropriety by referring to litigation in <u>United States v. Roof,</u> 10 F.4th 314, 334 (4th Cir. 2021).  The defendant implies that the government's designated expert behaved improperly in his mental health examination in that case.  However, as the Fourth Circuit's opinion makes clear, Roof's reaction was based on his discovery that his attorneys intended to present him as autistic, seemingly <u>without his knowledge</u>. <u>See id.</u>  Given that Dr. Dietz's examination of the defendant was forensic, and not therapeutic, in nature, there was

Questions about communications with family members after his arrest relate both to his conduct after his arrest and to his mental health status.  As for whether government experts may elicit evidence that "solely constitutes additional aggravating evidence," the defendant offers no details or explanation as to what types of questions this category might entail.  Indeed, core questions related to the defendant's alleged presentation of mental illness evidence will necessarily touch on certain aggravating factors, such as the defendant's views on Jewish people and possible lack of remorse.  The defendant has failed to identify any type of questioning that is foreclosed by the clear language of the Court's order.  It is therefore apparent that the defendant is in reality asking the Court, without any supporting authority, to preclude those valid areas of inquiry.  The Court should decline to do so.

## II.   The Court's Order Clearly Forecloses the Presence of Counsel During the Examinations.

The Court's order states that "[n]o counsel from the defense or the prosecution may be present during the examinations."  Doc. No. 1202 at 2.  The Court also barred any recording or a live video feed of the examinations.  Id.  The defendant now seeks to parse the word "present" and asks the Court for permission to be present at the Butler County Prison where the examination will take place.  Doc. No. 1214 at 3.  The plain language of the order and the Court's reasoning as detailed in its memorandum opinion do not allow for such an arrangement.  Doc. No. 1200 at 15-16.  In rejecting the defendant's earlier request for counsel to be present during the examination or

---

nothing improper with Dr. Dietz's informing the defendant about the purpose and reasons for his examination to ensure that the defendant understood that Dr. Dietz's role was as a government expert and that his examination was for the purposes of litigation and would not be kept confidential.  Moreover, it seems unlikely that the government's mental health examiner could effectively confirm or rebut the defense experts' mental health presentations if the examiner is required to keep the defendant himself completely in the dark as to the planned defense presentations. Defense counsel's claimed harm is also illusory where, in contrast to Roof, jury selection has already begun, with the defendant present in court while numerous prospective jurors, the lawyers, and the Court have explicitly referenced the possibility of a mitigation case involving testimony about epilepsy, schizophrenia, and brain malformation.

for counsel to be provided a live video feed of the examinations, the Court quoted <u>United States v. Wilson</u>, in which that district court found that the presence of counsel would create a

> problem that the defense might pose objections, and that those objections (1) would interfere with the examinations, (2) would likely be meritless given the court's conclusions about Wilson's Fifth Amendment rights, and (3) could be made just as effectively after the examinations are over, in the event that the Government seeks to introduce evidence from the examinations that the defense believes would violate Wilson's constitutional rights.

920 F. Supp. 2d 287, 304-06 (E.D.N.Y. 2012).  The defense's new proposal, which they declined to raise until this late stage, does not avoid the very problem the <u>Wilson</u> court envisioned.  Indeed, the defendant's entire justification for having counsel present on the premises is to allow the defendant to halt the examinations and consult with counsel.  Doc. No. 1214 at 4.[2]  The defendant claims this approach will not hinder the examinations, but there is no reason for the Court to credit that assertion.  The Court has already correctly determined that the defendant has no Sixth Amendment right to the presence of counsel during the examinations.  Doc. No. 1200 at 15-16 (citing cases).  The defendant provides no basis to reverse course on that decision now.

**III.     There Is No Basis to Order Immediate Disclosure of the Defendant's Statements.**

The defendant next asks the Court to impose an additional burden on the government's experts by compelling them to immediately turn over all notes or a compiled document containing "all statements made by Mr. Bowers during the government sponsored evaluations."  Doc. No.

---

[2]     The defendant claims he must have access to counsel during the exams "as a matter of right."  Doc. No. 1214 at 3.  Yet none of the cases he cites support this assertion.  The court in <u>Gibbs v. Frank</u>, 387 F.3d 268, 274 (3d Cir. 2004), simply held as a general matter that the defendant has Sixth Amendment rights in conjunction with court-ordered examinations—it does not give any particular insight as what those rights require.  The Ninth Circuit held in <u>Hess v. Macaskill</u>, 67 F.3d 307, at *3 (9th Cir. 1995), that the procedures in that case were "constitutionally sufficient," but did not address whether they were actually constitutionally <u>required</u>.  As for <u>Nelson v. United States</u>, Civ. No. 4:04-8005-FJG, 2010 WL 2010520, at *3 (W.D. Mo. May 18, 2010), and <u>United States v. Holmes</u>, Cr. No. 18-00258-EJD-1, 2020 WL 5414786, at *3 (N.D. Cal. Sept. 9, 2020), both cases involved agreements of the parties, and as a result neither court engaged in any legal analysis nor reached any legal conclusions regarding the ability to confer with counsel during the examination.  And finally, the court in <u>United States v. Fell</u>, Cr. No. 5:01-12-01, 2017 WL 9938051, at *3 (D. Vt. June 1, 2017), merely established the procedure without any discussion of the Sixth Amendment.  These cases therefore offer no support for the defendant's position.

1214 at 5.  This request clearly has nothing to do with "clarifying" the Court's order—the defendant is simply seeking to salvage a benefit from the Court's rejection of his other requests. The Court should reject this request as it will both impose onerous burdens on the examiners and will improperly and unfairly allow defense counsel to obtain a preview of the government's mental health evidence.

The government requested permission to record the examinations for several reasons, including that "recording will enhance efficiency by relieving the examiners of the obligation to take copious notes and permit them to concentrate fully on the interviews."  Doc. No. 1059 at 18. As the Court noted, the defendant opposed recording the examinations, and the Court has prohibited any such recording.  Having succeeded in preventing the government's experts from recording the defendant's statements, the defendant now asks the Court to <u>order</u> the experts to compile <u>all</u> of the defendant's statements and provide them to defense counsel.  This request would create unworkable and impractical demands on the government's experts, who will already be working to complete a fulsome examination of the defendant in 4.5 days (compared to the 4.5 years available to the defense experts).  Such an order would implicitly place upon those experts an obligation to record verbatim all of the defendant's statements, to the detriment of the examinations themselves.  The government's experts must be allowed to conduct mental health examinations, create an environment conducive to free communication with the defendant, and focus on their assessment of his responses, without an additional duty to create a fulsome transcript of the defendant's statements.

Further, the defendant's request is effectively a means to provide defense counsel with a preview of the government's experts' findings, in violation of Rule 12.2.  The experts' notes would have to include the expert's questions and the defendant's answers, which are necessarily part of

the "results" of the experts' examinations under Rule 12.2(c)(2).  By its very language, Rule 12.2(c)(2) prevents both defense counsel and government counsel from obtaining any such "results and reports" until <u>after</u> the defendant has been found guilty and reasserted his intention to place his mental health at issue during the penalty phase.  The Court's Order is consistent with the dictates of Rule 12.2 and directs that defense counsel will be provided the government experts' "raw data, storage media, or documentation" only after he is convicted of a death-eligible offense.  Doc. No. 1202 at 3.  Compelling production of the government experts' notes immediately after the examinations would violate both the rule and the Court's Order.  The Court should thus reject the defendant's request.

## IV.    There Is No Basis to Compel Production of Materials That Were Provided to the Government's Experts.

The defendant also seeks what he terms "reciprocal discovery" of materials that the government has provided to its experts in preparation for their examinations.  Doc. No. 1214 at 5.  What defendant seeks is far from reciprocity.  The Court ordered the defendant to provide "all the medical and mental health records of the Defendant that were provided to Defendant's mental health experts" and "raw data from neuropsychological tests, the CT scan, the MRI, the PET, and the EEG," to "a designated Government expert."  Doc. No. 1202 at 3.  The defendant now asks the Court to compel the government to provide <u>to defense counsel</u> "all records provided to the government examiners, the raw data resulting from the upcoming government testing and examinations, and a proffer of the evidence the government intends to offer on the aggravating factors it will seek to prove at sentencing."  Doc. No. 1214 at 5.

The asymmetry in the defendant's position is obvious.  Because of the firewall, the Court's order requires production of the universe of covered defense materials to the government's experts—not government counsel.  The Court did not order production of those materials for the

purpose of discovery; it ordered production to the experts to facilitate the government experts' examinations.  Doc. No. 1200 at 21, 21 n.4.  The defendant asks the Court to grant him an unfair advantage by ordering production of government materials to his lawyers that the Court's clear order does not grant to government counsel with respect to defense materials.  This request should be rejected outright.[3]

## V.     There Is No Basis to Require a Proffer of the Government's Aggravating Evidence.

Finally, the defendant asserts that he is "entitled" to a proffer of the government's intended evidence supporting aggravating factors.  Doc. No. 1214 at 7.[4]  The sole authority the defendant cites for this proposition is United States v. Edelin, 134 F. Supp. 2d 45, 54-55 (D.D.C. 2001).  But the Edelin court ordered a proffer in that case in the interests of a "fair resolution," not because of a specific legal entitlement.  Id. at 54 n.12.  In fact, the Edelin court acknowledged that the government had satisfied its legal requirements for notice of aggravating factors.  Id.  As such, the defendant is not "entitled" to the information he describes simply because he wishes to have it.

Moreover, such an order is not necessary in this case.  The defendant previously requested this exact information, and Judge Ambrose definitively ruled that he has been provided with sufficient notice of the government's proposed aggravating factors.  See Doc. No. 205.  Further,

---

[3]     The defendant seeks modification of the Court's order by requesting production of the government experts' raw data before the end of the guilt phase.  The Court's order is clear that the raw data will be provided in the event that the defendant is convicted of a death-eligible offense.  Doc. No. 1202 at 3. That order is consistent with Rule 12.2(c)(2), which requires that "results and reports of any examination conducted solely under Rule 12.2(c)(1) . . . must be sealed and must not be disclosed to any attorney for the government or the defendant unless the defendant is found guilty of one or more capital crimes and the defendant confirms an intent to offer during sentencing proceedings expert evidence on mental condition." Fed. R. Crim. P. 12.2(c)(2) (emphasis added).

[4]     Nowhere in his motion does the defendant identify how this request, which is wholly divorced from the Rule 12.2 examination procedures ordered by this Court, can constitute a request for clarification of the Court's order. Although the defendant claims that this request serves another purpose, i.e., "for purposes of preparing rebuttal to any evidence the government obtained during the [sic] examination" of the defendant, Doc. No. 1214 at 8 n.2, this is clearly yet another attempt by the defendant to have the government provide a preview of its trial strategy.  Indeed, the defendant's asserted purpose makes no sense given that this Court's order provides the defense with advance access to the reports and raw data before they are provided to the government.  Doc. No. 1202 at 3-4.  As such, the defendant will have the opportunity to review any information "obtained" during the examinations before the government has even had the opportunity to review that information.

pursuant to this Court's pretrial rulings, the United States has provided a witness list including its penalty phase witnesses and a penalty phase exhibit list.  The defendant will receive the results and reports of the government-sponsored mental health examinations, including raw data from testing, as provided by this Court's Order and consistent with the Federal Rules of Criminal Procedure.  See Doc. No. 1202 at 3 (requiring that the data to be provided to the defendant upon conviction of a capital crime).  As a result, the defendant will have ample information to allow him to weigh the desirability of presenting mental health evidence during the penalty phase of the trial. The Court should therefore reject the defendant's request.

## **CONCLUSION**

The Court's Order needs no clarification.  The defendant's mislabeled motion is simply an attempt to alter the procedures the Court has established in the defendant's favor and to impose additional burdens on the United States and its experts.  The Court should deny the motion in full.

Respectfully submitted,

TROY RIVETTI
ACTING UNITED STATES ATTORNEY

s/Troy Rivetti
TROY RIVETTI
Acting U.S. Attorney
PA ID No. 56816

s/Soo C. Song
SOO C. SONG
Assistant U.S. Attorney
DC ID No. 457268

s/Eric G. Olshan
ERIC G. OLSHAN
Assistant U.S. Attorney
IL ID No. 6290382

s/Nicole Vasquez Schmitt

NICOLE VASQUEZ SCHMITT
Assistant U.S. Attorney
PA ID No. 320316

s/Mary J. Hahn
MARY J. HAHN
Trial Attorney
Civil Rights Division
DC ID No. 500193

s/Barry K. Disney
BARRY K. DISNEY
Trial Attorney
Capital Case Section
KS ID No. 13284

s/Aaron J. Stewart
AARON J. STEWART
Trial Attorney
Capital Case Section
OK ID No. 31721