IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

ROBERT BOWERS

Criminal No. 18-292

## GOVERNMENT'S OMNIBUS PENALTY PHASE MOTION *IN LIMINE* AND MEMORANDUM IN SUPPORT

AND NOW comes the United States of America, by its attorneys, Eric G. Olshan, United States Attorney for the Western District of Pennsylvania, Troy Rivetti, Soo C. Song, and Nicole Vasquez Schmitt, Assistant United States Attorneys for said district, Mary J. Hahn, Trial Attorney, Civil Rights Division, and Barry K. Disney and Aaron J. Stewart, Trial Attorneys, Capital Case Section, and submits this omnibus motion to exclude certain defense evidence, information, or arguments from the penalty phase of the trial. Because the issues are governed largely by the same legal principles, the United States submits them in omnibus fashion.

## General Principles and Legal Standards

The Eighth Amendment of the United States Constitution requires that a jury in a capital case be able to consider all relevant mitigating evidence and to decide what weight, if any, to give to such evidence. See Boyde v. California, 494 U.S. 370, 377 (1990); Eddings v. Oklahoma, 455 U.S. 104, 110 (1982). However, the defendant does not have unfettered discretion to present any evidence he claims may be mitigating. Rather, the Supreme Court has clearly established that relevant mitigating evidence must be related to the defendant's background, character, or record, or the circumstances of his offense. The Court first introduced this definition of mitigating evidence in Lockett v. Ohio, 438 U.S. 586, 604 (1978) (plurality op.) (concluding that the Eighth

Amendment "require[d] that the sentencer . . . not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense").  Four years after Lockett, a majority of the Court in Eddings v. Oklahoma held that evidence of a defendant's background, including his difficult family history and emotional disturbance, constituted "relevant mitigating evidence."  455 U.S. at 115.  Lockett and Eddings stand for the principle that punishment must relate directly to the defendant's personal culpability. Penry v. Lynaugh, 492 U.S. 302, 319 (1989), overruled on other grounds, Atkins v. Virginia, 536 U.S. 304 (2002); see also United States v. Gabrion, 719 F.3d 511, 521-25 (6th Cir. 2013) (en banc) (quoting Buchanan v. Angelone, 522 U.S. 269, 276 (1998)); Owens v. Guida, 549 F.3d 399, 419 (6th Cir. 2008) (listing cases in which the Supreme Court has "confirmed that Lockett did not make all evidence automatically relevant" and holding courts may exclude certain evidence from capital sentencing hearings as irrelevant).

Applying Lockett's teachings to capital trials prosecuted under the Federal Death Penalty Act ("FDPA"), 18 U.S.C. § 3593, federal courts regularly exclude proffered mitigation unrelated to a defendant's background, record, or character, or the circumstances of his/her offense, recognizing that the broad statutory standard for admission does not furnish defendants with "carte blanche to introduce any and all evidence."  United States v. Fell, 531 F.3d 197, 219 (2d Cir. 2008) (affirming exclusion of a rejected plea agreement that would have created a "confusing and unproductive inquiry").  Courts may freely "exclude as irrelevant evidence that does not bear on the defendant's character, prior record, or the circumstances of the crime."  United States v. Hager, 721 F.3d 167, 193 (4th Cir. 2013) (affirming the exclusion of execution impact evidence, i.e., evidence of the impact the defendant's execution would have on certain of his family members, and holding that "allowing a capital defendant to argue execution impact as a mitigator is

improper" because it "goes beyond testimony about the defendant's character, prior record, or the circumstances of the crime"); see also United States v. Umana, 750 F.3d 320, 350 (4th Cir. 2014) (affirming the exclusion of information relating to murders committed by other gang members); United States v. Snarr, 704 F.3d 368, 399-401 (5th Cir. 2013) (affirming the exclusion of execution impact evidence and "reverse victim impact," i.e., evidence of the victim's background); United States v. Purkey, 428 F.3d 738, 756 (8th Cir. 2005) (upholding the exclusion of involuntary intoxication evidence amongst other proposed mitigating information); United States v. Johnson, 223 F.3d 665, 675 (7th Cir. 2000) (explaining that evidence about the existence of maximum security prisons with control units did not establish a proper mitigating factor); United States v. Chandler, 996 F.2d 1073, 1086 (11th Cir. 1993) (holding that the "possibility" of receiving a sentence of life imprisonment without parole did not fall within the Lockett definition of mitigating factors).

Section 3593(c) authorizes the exclusion of penalty phase evidence if "its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jurors." Section 3593's language differs from its familiar counterpart, Federal Rules of Evidence Rule 402, which authorizes the exclusion of evidence if its "probative value is substantially outweighed" by the potential for prejudicial impact. See, e.g., United States v. Taveras, 585 F. Supp. 2d 327, 335-36 (E.D.N.Y. 2008) (citing the statutes and other cases).

## Argument

**I.    Evidence, Information, and Arguments Subject to Exclusion**

The United States anticipates the defendant will seek to offer penalty phase evidence and argument that holds little to no probative value and poses a significant risk of creating unfair prejudice, confusing the issues, and/or misleading jurors. Those arguments and that evidence

should be excluded.

**A.     The Court should preclude any defense argument concerning application of the reasonable doubt standard to the weighing of sentencing factors.**

After a penalty phase jury determines the applicable aggravating and mitigating factors, § 3593 mandates that the jury must determine what sentence is "justify[ed]" under the circumstances.  The statute does not refer to the reasonable doubt standard for this weighing, and the Court should bar the defense from arguing or suggesting it applies to this process.  This Court has already determined that the reasonable doubt standard does not apply to the weighing process, and the defendant should not be permitted to make arguments that are contrary to this Court's well-considered instructions.  Final Draft Sentence Selection Phase Jury Instructions at 45-47.  Any such argument would confuse and mislead the jurors and should not be permitted.

Under § 3593, the penalty phase has two steps: (1) an eligibility determination and (2) the selection of the actual punishment from among the eligible penalties.  Those steps receive "differing constitutional treatment."  Buchanan, 522 U.S. at 275.

To establish eligibility for the death penalty, the jury must make factual findings. Specifically, it must find, for each capital count, the applicability of at least one alleged intent factor prescribed in 18 U.S.C. § 3591(a)(2) and at least one alleged aggravating factor prescribed in 18 U.S.C. § 3592.  The jury assesses both of these findings under the reasonable doubt standard. See 18 U.S.C. § 3591(a)(2) (prescribing reasonable doubt as the standard for determining intent factors); 18 U.S.C. § 3593(e)(2) (prescribing the reasonable doubt standard for aggravating factor findings).  The jury evaluates the existence of mitigating factors under "a preponderance of the information" standard.  18 U.S.C. § 3593(e). In selecting the sentence based on the aggravating and mitigating factors it has found, the jury must

consider whether all the aggravating factor or factors found to exist sufficiently

outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death.

18 U.S.C. § 3593(e).  Thus, the jury may impose a sentence of death only if it unanimously agrees that the sentence is justified by the relative weight of the factors it has found.  Id.

The weighing of factors—according to every appellate court to consider the issue—is not a factual determination amenable to the reasonable doubt standard.  See Gabrion, 719 F.3d at 532-33 (in making the judgment of whether a death sentence is just, the jury does not need to be instructed as if it were making a finding of fact); United States v. Runyon, 707 F.3d 475, 516 (4th Cir. 2013) ("the FDPA does not require the jury to find that the aggravating factors outweigh the mitigating factors beyond a reasonable doubt, and the jury therefore need not be so instructed"); United States v. Fields, 516 F.3d 923, 950 (10th Cir. 2008) (holding the reasonable doubt standard does not apply to the weighing process); United States v. Mitchell, 502 F.3d 931, 993-94 (9th Cir. 2007) ("the weighing step is an 'equation' that 'merely channels a jury's discretion by providing it with criteria by which it may determine whether a sentence of life or death is appropriate'") (quoting Kansas v. March, 548 U.S. 163, 164 (2006)); United States v. Sampson, 486 F.3d 13, 31 (1st Cir. 2007) ("Congress did not intend the reasonable doubt standard to apply to the weighing process"), vacated on other grounds by Sampson v. United States, 724 F.2d 150, 170 (1st Cir. 2013); United States v. Fields, 483 F.3d 313, 345-46 (5th Cir. 2007) ("[s]ince the Constitution does not require a jury to do the weighing, we cannot conclude that the showing required must be proof beyond a reasonable doubt"); Purkey, 428 F.3d at 749-50 (weighing process is not an "elemental fact" but is rather a "consideration" the jury uses to determine a sentence).   Before reaching the weighing process, the jury "already ha[s] found beyond a reasonable doubt the facts needed to support a sentence of death." Sampson, 486 F.3d at 32

Because the weighing process does not involve fact finding, it would be misleading for the defendant to assert that the beyond a reasonable doubt standard applies to that aspect of sentence selection. The Court should therefore preclude the defendant from making any arguments that the jury must find a sentence of death is justified beyond a reasonable doubt.

> **B.    The Court should bar misleading arguments as to jurors' sentencing options.**

The defense may argue that, regardless of its findings as to the relative weight of the sentencing factors, the jury is never required to impose a death sentence. It may also assert that, notwithstanding a finding that the aggravating factors sufficiently outweigh any mitigating factors, jurors may nevertheless thereafter consider "mercy" in determining whether to impose a death sentence. These arguments are in direct contravention of the Federal Death Penalty Act ("FDPA"),[1] and the United States objects to any attempts to nullify a juror's weighing determination or to improperly inject "mercy" after a juror has properly weighed the sentencing factors. The need for a clear ruling by this Court on this issue is necessary; as revealed by the voir dire process, potential jurors were often confused (and misled) about the distinction between the discretion they had to give weight to different factors <u>during</u> the weighing process, and the requirement that, after the weighing process they conclude that death is the appropriate sentence, they impose death. Any argument by the defendant to suggest otherwise would confuse the jury about their duties as jurors under the FDPA.

The FDPA requires the United States to prove aggravating factors beyond a reasonable doubt and to the unanimous satisfaction of the jury. § 3593(c) & (d). In contrast, the Act requires

---

[1]    The Court previously determined it will instruct the jury that it is never required to impose a death sentence, meaning the result of the weighing process is never foreordained. <u>See</u> Court's Final Draft Sentence Selection Phase Jury Instructions at 46. The United States acknowledges this determination by the Court. However, the Court's instructions are equally clear that once a juror has completed the weighing process, and if the juror determines that death is the appropriate sentence, he or she must impose death. The United States objects to any defense argument that implies or suggests that the jury can resolve the weighing process in favor of death but still choose not to impose that sentence based on notions of "mercy."

the defendant to establish mitigating factors by a "preponderance of the information" to any juror

or jurors.  Id.  The jury then determines whether the proven aggravating factors sufficiently

outweigh the established mitigating factors to justify a death sentence.  Id. § 3593(e).  The

determination must be unanimous.  Id.  Moreover, the FDPA also makes clear that a defendant

> shall be sentenced to death if, after consideration of the factors set forth in section
> 3592 in the course of a hearing held pursuant to section 3593, it is determined that
> imposition of a sentence of death is justified, except that no person may be
> sentenced to death who was less than 18 years of age at the time of the offense.

§ 3591(a) (emphasis added).

In keeping with this statutory guidance, the Fourth Circuit affirmed the refusal to instruct

a capital jury with a defense proposal that would have permitted the jury to select a sentence on

the basis of its own sentiments, rather than the established aggravators and mitigators:

> [W]hatever findings you make with respect to the aggravating and mitigating
> factors, you are never required to impose a sentence of death. For example, there
> may be something about this case or about Carlos David Caro that one or more
> of you are not able to identify as a special mitigating factor, but that nevertheless
> creates a reasonable doubt about the need for Carlos David Caro's death. In such
> a case, the jury should render a decision against a death sentence. Moreover, even
> when a sentence of death is fully supported by the evidence, Congress has
> nevertheless given each of you the discretion to temper justice with mercy. Any
> one of you is free to decide that a death sentence should not be imposed in this
> case for any reason that you see fit. You will not have to explain the reason.
> Indeed, I am specifically required by law to advise you that you have this broad
> discretion.

United States v. Caro, 597 F.3d 608, 631 (4th Cir. 2010).  The district court found the instruction

"improper because it would have told the jury that it could base its determination on factors not

specified in the FDPA."  United States v. Caro, 483 F. Supp. 2d 513, 517-18 (W.D. Va. 2007).  In

affirming, the Fourth `Circuit observed that § 3593(e) provides that during sentence selection, the

jury "may consider only whether the death penalty is justified . . . . [and] § 3591 states plainly that

an eligible defendant 'shall be sentenced to death if . . . it is determined that imposition of a

sentence of death is justified.'" Caro, 597 F.3d at 632-33; accord United States v. Allen, 247 F.3d 741, 780-81 (8th Cir. 2001), vacated and remanded on other grounds, 536 U.S. 953 (2002) (affirming the denial of a "mercy instruction" that would have informed the jury it was never required to impose death regardless of its weighing of sentencing factors).

The courts' reasoning with respect to instructions applies with equal force to penalty phase summations.  See generally United States v. Anderson, 1 F.4th 1244, 1266-67 (11th Cir. 2021) (holding defense counsel's misstatement of the law to the jury can justify an amendment to the Court's previously identified instructions).  The relevant law clearly precludes the jury from disregarding its findings and conclusions once it has determined that the aggravating factors sufficiently outweigh the mitigating factors to justify the sentence of death.  Any argument to the contrary would mislead the jury as to its obligations under the FDPA.  The Court should therefore preclude the defendant from arguing or suggesting to the jury that it enjoys some arbitrary sentencing discretion outside the confines of the law.

### C.    The Court should bar the defendant from making misleading arguments as to the jurors' finding and weighing of mitigating factors.

While, at the penalty phase, the United States must prove age, intent, and aggravating factors beyond a reasonable doubt to the jury's unanimous satisfaction, the defendant need only establish mitigating factors by a preponderance of the evidence to individual jurors.  See 18 U.S.C. § 3593.  Indeed, as construed by the appellate courts, the FDPA plainly states that jurors may independently accept or reject mitigators and accord them as much weight as they see fit.  See United States v. Coonce, 932 F.3d 623, 635 (8th Cir. 2019) (quoting United States v. Paul, 217 F.3d 989, 999–1000 (8th Cir. 2000) for the proposition that "no statute or case law . . . 'require[s] a capital jury to give mitigating effect or weight to any particular evidence,' and '[t]here is only a constitutional violation if there exists a reasonable likelihood that the jurors believed themselves

precluded from considering relevant mitigating evidence.'"); United States v. Johnson, 495 F.3d 951, 966 (8th Cir. 2007) (quoting Paul, at 999-1000 for the proposition that "[a] capital jury is not required 'to give mitigating effect or weight to any particular evidence'"); United States v. Webster, 162 F.3d 308, 327–28 (5th Cir. 1998).  ("Because the plain language of the statute does not compel every juror to weigh each mitigating factor found by at least one juror, the court did not abuse its discretion in denying the instruction that would have required it."); see also United States v. Rodriguez, 581 F.3d 775, 799 (8th Cir. 2009) (holding the defendant "had to prove mitigating factors; the jury should consider only those mitigating factors proved by a preponderance of the evidence; and the jury could decide that any mitigating factors, even if proved, are sufficiently outweighed by aggravating factors").

This flexibility aside, the FDPA does not provide for the weighing of factors that jurors have factually rejected, and this Court should prohibit the defendant from arguing that the panelists may weigh mitigators they have not found true.  In fact, the Fourth Circuit specifically rejected a contention that a single juror's finding of an alleged mitigator binds the remaining panelists to weigh and consider it.  United States v. Jackson, 327 F.3d 273, 302 (4th Cir. 2003).  The Fourth Circuit's construction is in harmony with the Supreme Court's approach to mitigation generally, as explained in United States v. Johnson, 495 F.3d at 966:

> Sentencers "may determine the weight to be given relevant mitigating evidence. But they may not give it no weight by excluding such evidence from their consideration." Eddings v. Oklahoma, 455 U.S. 104, 114-15 (1982). A capital jury is not required "to give mitigating effect or weight to any particular evidence." Paul, 217 F.3d at 999–1000 (citing Boyde v. California, 494 U.S. 370, 377 . . . (1990)). "There is only a constitutional violation if there exists a reasonable likelihood that the jurors believed themselves precluded from considering relevant mitigating evidence." Id. at 1000.

Given the clear limitations on the reach of mitigating evidence, the defendant should not have latitude to mislead the jurors about the existence of any obligation to consider factors they

have personally rejected.

      **D.**      **The Court should exclude evidence or arguments comparing the facts of this case to any other.**

The government has reason to believe that the defendant will call Kevin McNally as a penalty phase witness who will purportedly testify to his opinion about the arbitrary application of the Federal Death Penalty.  The proffered testimony, rather than concerning a legally cognizable mitigator, appeals to a misguided interpretation of legal consistency that courts have termed "comparative proportionality."[2]  Such evidence has <u>nothing</u> to do with the defendant's background, character, or record, or the circumstances of his offense and therefore is irrelevant and inadmissible.

The Supreme Court has clearly held that "comparative proportionality" review is not constitutionally required.  <u>See</u> <u>Pulley v. Harris</u>, 465 U.S. 37, 39-40 (1984).  Comparative proportionality differs from the proportionality demanded by the Eighth Amendment:  "Eighth Amendment proportionality, as defined by the Supreme Court, refers to an abstract evaluation of the appropriateness of a sentence for a particular crime."  <u>Getsy v. Mitchell</u>, 495 F.3d 295, 305 (6th Cir. 2007) (internal quotations omitted).  The Supreme Court has only struck death sentences on Eighth Amendment proportionality grounds by comparing the crime at bar with other offenses—not  by comparing sentences received by similarly situated defendants.  <u>Id.</u> (citing <u>Pulley</u> and <u>McCleskey v. Kemp</u>, 481 U.S. 279 (1987)).  A defendant cannot prove a constitutional violation by demonstrating that other defendants who may be similarly situated did not receive the death penalty.  <u>See id.</u> (rejecting a habeas claim that a death sentence was disproportionate to the life sentence imposed on a codefendant who purportedly instigated the murder murder); <u>see also</u>

---

[2]     <u>See</u> <u>United States v. Williams</u>, 18 F. Supp. 3d 1065, 1073 (D. Haw. 2014) (categorizing similar testimony by McNally as "comparative proportionality" evidence).

United States v. Ebron, 683 F.3d 105, 155-56 (5th Cir. 2012) (rejecting claim that death sentence was arbitrary in light of fact that three codefendants did not receive death sentences).

The FDPA procedural requirements safeguard against disproportionality as a matter of Eighth Amendment jurisprudence. See United States v. Montgomery, Cr. No. 2:11–20044–JPM–1, 2014 WL 1453527, *8 (W.D. Tenn. Apr. 14, 2014) (citing, inter alia United States v. Johnson, 900 F. Supp. 2d 949, 955–56 (N.D. Iowa 2012) and United States v. Taylor, 648 F.Supp.2d 1237, 1239–41 (D.N.M. 2008)).

Comparisons between this case and others would do nothing to ensure Eighth Amendment compliance; rather it would run afoul of the collective decisional law regarding the scope of mitigation evidence. The facts and circumstances of other cases, including the backgrounds and characteristics of other defendants, have nothing to do with a "reasoned moral response" to this defendant's background and character, or to the circumstances of the offenses in this case. See Gabrion, 719 F.3d at 522; see also United States v. Caro, 461 F. Supp. 2d 459, 464-65 (W.D. Va. 2006) (granting government's motion in limine to preclude comparative proportionality evidence); United States v. Umana, Cr. No. 3:08-134, 2010 WL 1740487, *4 (W.D.N.C. Apr. 28, 2010) (rejecting mitigators premised on proportionality review as "irrelevant to [defendant's] character or the circumstances of [the] offenses, and is likely to confuse and mislead the jury").

The danger of confusion is highlighted by the defendant's prior submission alleging that the Government's decision to seek the death penalty in this case was arbitrary, an allegation that this Court squarely rejected. See Doc. No. 1180 at 5-8. The defendant should not be permitted to attempt to present that same argument to the jury in hopes of achieving a different finding.

Moreover, such evidence would lead to mini-trials about the facts of whatever cases this defense witness might identify. The jury should not be distracted from its obligation to consider

relevant mitigation related to the defendant's background, character, and circumstances of <u>this</u> offense, and should not have to wade through the facts of totally unrelated cases to determine whether such cases are, in fact, comparable to the circumstances of this case—multiple killings of elderly worshippers in a house of worship, committed by a middle-aged adult, based on religious animus.[3]

Given the recognized ambit of mitigation evidence, this Court should preclude the defendant from introducing comparative proportionality evidence or arguments and specifically exclude the opinions and observations of Mr. McNally concerning other cases.  Comparative proportionality review does not constitute relevant mitigating information under the Constitution or the FDPA.  The putative evidence lacks any probative value and threatens a significant risk of confusing the issues and misleading the jury.  Further, this defendant has now been convicted of killing 11 victims and attempting to kill many more.  Any argument that the decision to seek the death penalty was arbitrary was grossly undercut by the jury verdict and should not be allowed.

### E.    The Court should preclude the defendant from presenting testimony regarding the deterrent effects of the death penalty.

The government has reason to believe the defendant will call Michael Radelet as a witness regarding the deterrent effect of the death penalty.  The Court should preclude this evidence, which does not concern the defendant or the facts and circumstances of his crime.

As noted, constitutionally cognizable mitigation concerns the defendant's character, prior record, or the circumstances of his offense.  <u>See</u> <u>Lockett</u>, 438 U.S. at 604.  That definition patently does not include the deterrent effect (or arguable lack thereof) of the government's penal policy.  Evidence about this topic is, therefore, irrelevant to any mitigating factor the defendant may

---

[3]     And, as the government noted in this previous briefing, the defendant notably omitted from its list the most obvious comparator, <u>United States v. Dylann Roof</u>, 2:15cr:472 (D.S.C. 2016), in which a white supremacist was sentenced to death for killing nine parishioners in a house of worship.

appropriately allege.  <u>United States v. Honken</u>, 378 F. Supp. 2d 970, 998-99 (N.D. Iowa 2004) (collecting cases and finding a jurisprudential consensus that deterrence "evidence is not admissible, even at the penalty phase, because it is not proper mitigating evidence related specifically to the defendant").   Moreover, such evidence would not rebut any government allegation in favor of imposing a death sentence:  as alleged in the Notice of Intent to Seek the Death Penalty (Doc. No. 86),  the United States does not intend to premise its case for capital punishment on the punishment's deterrent effect.

This Court should exclude any proffered deterrence evidence as lacking any probative value, wasting the jury's time and presenting a substantial risk of misleading the jury and persuading it to consider impermissible sentencing factors.

> ### F.      The Court should exclude evidence of the defendant's conditional offer to plead guilty.

The defendant should be precluded from referring or offering the fact that the defendant conditionally offered to plead guilty to avoid the death penalty.  Before the Attorney General authorized a capital prosecution in this case, the defendant asserts that he offered to "plead guilty as charged and to be sentenced to life in prison without the possibility of release."  Doc. No. 100 at 2.  And in a later letter seeing withdrawal of the government's notice of intent to seek the death penalty, the defendant again represents that he offered to plead guilty and accept a life sentence. Doc. No. 1096 at 4 n.7.  Although an unqualified offer to plead guilty could demonstrate acceptance of responsibility, an offer conditioned upon agreement to forgo a capital prosecution constitutes an inadmissible negotiation for leniency, rather than evidence reflecting on the defendant's character.

A letter "calculated to persuade the government not to seek the death penalty, rather than expressing unqualified remorse," does not demonstrate "acceptance of responsibility."  <u>Caro</u>, 597

F.3d at 634-35 (affirming exclusion of such a letter).  Likewise, the District of New Mexico, following a thorough review of other courts' rulings, excluded conditional plea offers on three alternate grounds.  United States v. McCluskey, Cr. No. 10-2734, ECF Doc. No. 1060, at 25-29 (D.N.M. Jun. 23, 2013) (attached hereto as Exhibit A).  First, the court found that the conditional plea offers were not mitigating under the FDPA.  Id. at 29.  Second, it found they were not mitigating under the Constitution.  Id.  And third, it determined the probative value of the offers was outweighed by the danger they would create unfair prejudice.  Id.

The United States is aware of the admission of plea offer evidence in the trial of Charleston church shooter Dylann Roof under facts that do not exist here.  United States v. Roof, Cr. No. 2:15-472- RMG, 2016 WL 8678863, at *2 (D.S.C. Oct. 14, 2016).  However, the Roof court premised that decision on the unique facts at bar: Roof "offered—repeatedly and publicly—to plead guilty, before the jury panel was sworn and even before the Government decided to seek the death penalty, and those offers were widely reported in national and regional media."  Id.  Moreover, during a recorded custodial interview, Roof had openly admitted his guilt, evidence the government planned to present to the jury.  Id.

The sui generis facts that influenced the Roof court are not present here.  This Court should exclude any offer of the defendant's conditional plea offers, as the United States has no intention to rely on any full confession attributable to the defendant.  Though the defendant's plea offer, as it appeared in the court record, attracted sporadic media attention, he did not make repeated offers in public view.  Rather, as in McCluskey, the defendant's plea offers do not constitute cognizable mitigation evidence of any stripe.  They were transparent attempts to avoid a capital trial, and they provide little, if any, insight into a possible claim of remorse or regret the defendant might assert. De minimis probative value aside, evidence of the conditional plea offers could well confuse or

mislead the jury by suggesting that the government's decision to pursue the death penalty constitutes an appropriate consideration for them in their sentencing determination.

### G. The Court should exclude opinions about the appropriate sentence in this case or the defendant's potential for societal contributions.

In a capital sentencing proceeding, witnesses may not properly opine about the appropriate sentence or speculate about a defendant's potential for adjustment and future contributions to society. This Court should not permit such evidence here.

State and federal courts have uniformly held that a penalty phase witness may not express an opinion as to the appropriate sentence or request imposition of the death penalty. See United States v. Savage, 970 F.3d 217, 299-300 (3d Cir. 2020) (holding witnesses are prohibited from expressing their views as to the proper sentence); Reese v. Delo, 94 F. 3d 1177, 1183 (8th Cir. 1996) (affirming, in a proceeding under 28 U.S.C. § 2254, a decision that capital punishment opinion evidence is inadmissible and therefore excluded from the prosecution's constitutional discovery obligations); Robison v. Maynard, 829 F.2d 1501, 1504-05 (10th Cir. 1987) (§ 2254 opinion rejecting the admissibility of opinion evidence proffered by the defense concerning the appropriateness of a death sentence), overruled on other grounds, Romano v. Gibson, 239 F.3d 1156 (10th Cir. 2001); United States v. Con-Ui, No. 3:13-CR-123, 2017 WL 1410913, at *2-3 (M.D. Pa. Apr. 20, 2017) (barring opinion evidence on the proper sentence).

In United States v. Lighty, the Fourth Circuit considered the admissibility of an opinion about the defendant's prospects for positively influencing others, if he received a life sentence. United States v. Lighty, 616 F.3d 321, 364 (4th Cir. 2010). The district court had sustained an objection to this evidence, stating that defense counsel could elicit from the witness—the defendant's uncle—"his own experience, his own relationship, his own evaluation of this man's character, but to ask him to extrapolate, saying how he will get along in prison if he gets life

imprisonment is not a proper question." Id. In upholding the ruling, the Fourth Circuit distinguished the evidence at issue from that in Skipper v. South Carolina, 476 U.S. 1 (1986), in which the Supreme Court held that a state court erroneously excluded the observations of two jailors and a visitor concerning the defendant's adjustment to pre-trial detention:

> Randy Lighty's testimony bore no resemblance to the kind of testimony that was excluded in Skipper. Unlike the jailors and visitor in Skipper, Randy Lighty was not asked about his observations of Lighty's adjustment to prison life prior to his trial. Instead, the question posed of Randy Lighty, whether he believed Lighty would have a positive impact on those in jail, called for no more than rank speculation about how Lighty would adjust to life in prison.

Id. (emphasis added).

This Court should adhere to that approach and preclude opinions about the sentence the jury should impose and speculation as to how the defendant may adjust to life in prison. Such remarks hold little, if any, probative value and present an obvious risk of confusing the issues and misleading the jury with conjecture and emotionally-based remarks.

### H. The Court should exclude information about the defendant's potential future conditions of confinement.

The government has reason to believe that the defense apparently intends to call three "expert" witnesses during the penalty phase to testify about the defendant's potential conditions of confinement if he receives a life sentence. The Court should bar these witnesses from testifying, as their knowledge and opinions are irrelevant to matters at issue during the penalty phase. The government has not alleged future dangerousness as an aggravating factor, and the conditions of confinement for this defendant are irrelevant and entirely speculative.

During the penalty phase, courts maintain their traditional discretion "to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense." Lockett, 438 U.S. at 604. Evidence of potential conditions of confinement is not

mitigating, as it does not bear on the defendant's character or offense.  See United States v. Taylor, 814 F.3d 340, 361 (6th Cir. 2016) abrogated on other grounds, United States v. Richardson, 948 F.3d 733 (6th Cir. 2020) (citing Zant v. Stephens, 462 U.S. 862, 879 (1983); Eddings, 455 U.S. at 112; Jurek v. Texas, 428 U.S. 262, 276 (1976); Gregg v. Georgia, 428 U.S. 153, 189 n. 38 (1976)). Instead, the proffered testimony concerns only the functioning of the Bureau of Prisons. "[T]estimony about general prison conditions and the anticipated effectiveness of security protocols is insufficiently individualized" to satisfy the Supreme Court's conception of mitigation. Taylor, 814 F.3d at 361.

Indeed, several courts have held that evidence of prison conditions is irrelevant for a jury considering a capital sentence. As the Seventh Circuit explained, a defense argument that life imprisonment, "especially if it is spent in the prison's control unit and thus in an approximation to solitary confinement, sufficiently achieves the objectives aimed at by the death penalty to make the latter otiose is an argument addressed to legislatures, not to a jury." Johnson, 223 F.3d at 675. Relying on the Seventh Circuit's reasoning, the Fourth Circuit affirmed the exclusion of proffered mitigation because it addressed a legislative policy matter.  United States v. Higgs, 353 F.3d 281, 328 (4th Cir. 2003).  Likewise, the Eighth Circuit found that the district court could allow conditions of confinement evidence to rebut an allegation of future dangerousness, but it should not "instruct juries that sufficient control in prison is a mitigating factor.  We are not certain this evidence is individualized enough to qualify as a mitigating factor because some BOP evidence is common to many BOP defendants."  Coonce, 932 F.3d at 639; accord Roof, 2016 WL 8678863, at *1  (excluding conditions of confinement evidence because "details of prison administration are not a proper matter for a capital sentencing jury"); United States v. Smith, Cr. No. 3:16-00086-SLG-1, 2020 WL 4360905, at *1 (D. Alaska July 29, 2020) ("a defendant may not offer

general evidence of prison conditions or security as a stand-alone mitigating factor.") (quoting United States v. Umana, Cr. No. 3:08-134, 2010 WL 1688441, at *2 (W.D.N.C. Apr. 26, 2010)).

Conditions of confinement evidence is irrelevant to mitigation and, in this case, has no potential to rebut any alleged aggravators. As noted, conditions of confinement evidence and proof of good behavior in confinement can be relevant rebuttal when the government has asserted future dangerousness as an aggravator. See Simmons v. South Carolina, 512 U.S. 154, 169 (1994) ("Because truthful information of parole ineligibility allows the defendant to 'deny or explain' the showing of future dangerousness, due process plainly requires that he be allowed to bring it to the jury's attention by way of argument by defense counsel or an instruction from the court."); Skipper, 476 U.S. at 5 n.1 (holding a defendant must be allowed to present evidence that he would not be a threat if incarcerated "[w]here the prosecution specifically relies on a prediction of future dangerousness in asking for the death penalty"). But here, the United States has not alleged the defendant's likely future dangerousness, nor does it intend to introduce any evidence on that issue.

Because the potential witnesses will not offer evidence relevant to mitigation or aggravation, the Court should exclude them. Indeed, their testimony will likely mislead and confuse the jury about premising a sentencing decision on policy issues within the purview of Congress.

Finally, the location and conditions under which the defendant will be held are entirely speculative. It is up to the Bureau of Prisons to determine where to place an inmate, and such a determination is made only after conviction. The Court, accordingly, should exclude their testimony in its entirety.

### I.    The Court should exclude evidence relating to the effect the defendant's execution would have on his family, friends, and loved ones.

The defendant may attempt to introduce evidence relating to the effect that his execution

would have on his family, friends, and loved ones.  Such testimony is irrelevant to mitigation, and this Court should exclude it.

Although the FDPA expressly permits the introduction of victim impact evidence (§ 3593(a)), "there is no parallel provision allowing for execution impact evidence.  Asking the jury to sentence a defendant to life is not mitigating evidence."  United States v. Taylor, 583 F. Supp. 2d 923, 944-45 (E.D. Tenn. 2008) (citing Mitchell, 502 F.3d at 991, and Caro, 461 F. Supp. 2d at 465 in support of the denial of a motion for acquittal premised on the exclusion of execution impact evidence); accord United States v. Lujan, Cr. No. 05- 924, Doc. No. 782 at 6 (D.N.M. April 15, 2011) (attached as Exhibit B).  At least two Courts of Appeal conducting habeas review of state death sentences have concluded that federal law does not require admission of execution impact testimony.  See Snarr, 704 F.3d at 401 (citing Stenson v. Lambert, 504 F.3d 873, 891-92 (9th Cir. 2007) and Jackson v. Dretke, 450 F.3d 614, 617-18 (5th Cir. 2006)).

Although a handful of district courts have permitted execution impact evidence (see, e.g., United States v. Wilson, 493 F. Supp. 2d 491, 506-07 (E.D.N.Y. 2007); United States v. Fell, Cr. No. 2:01- 12-01, 2005 WL 1634067 (D. Vt. July 5, 2005)), the decisions lack persuasive force, because they run counter to Supreme Court jurisprudence:

> Permitting a capital defendant to argue execution impact as a mitigating factor would run contrary to the principles underpinning Payne [v. Tennessee, 501 U.S. 808], where the Supreme Court overruled in part Booth v. Maryland, 482 U.S. 496 (1987) and South Carolina v. Gathers, 490 U.S. 805 (1989), to allow the admission of victim impact evidence as an aggravating factor.  However, Payne reaffirmed Booth and Gathers to the extent they prohibit victim impact testimony that advocates for a sentence of death.  501 U.S. at 830, n.2.  Applying these principles to mitigating evidence, a logical extension of Payne would allow family of the defendant to testify about his life and characteristics, but prohibit them from specifically advocating against the death penalty or its impact on their lives.  See United States v. Taylor, 483 F. Supp. 2d 923, 944 (E.D. Tenn. 2008) (citing Payne, 501 U.S. at 827 ("The parallel between defendant and victim supports prohibiting witnesses from opining on their desired sentence, regardless of their preference.").

United States v. Umana, Cr. No. 3:08-134, 2010 WL 3023498, *15 (W.D.N.C. July 27, 2010).

Execution impact testimony—particularly that which concerns love for a defendant or the importance of his presence in a witness's life—is relevant to background or character of the person testifying, not that of the defendant:

> [E]vidence regarding how Hager's execution might affect his daughters would have provided the jury with nothing about his character, prior record, or the circumstances of his offense. And the fact that they love him or that it is important to them "to talk with him, see him, and have him in their lives" provides no insight, either.

Hager, 721 F.3d at 196-97 (emphasis added); see also Coleman v. Saffle, 869 F.2d 1377, 1393 (10th Cir. 1989) (affirming the denial of habeas relief in the face of a claim that the trial court erroneously excluded statements by the defendant's wife and sister-in-law that they loved defendant because the statements "in no way concerned an aspect of [defendant's] 'character or record and any of the circumstances of the offense'").

Execution impact evidence is clearly distinguishable from victim impact evidence, which is permitted under the FDPA and Supreme Court precedent (see 18 U.S.C. § 3593(a); Payne, 501 U.S. 808). Because victim impact evidence concerns the harm caused, it informs the jury's assessment of "the defendant's moral culpability and blameworthiness." Payne, 501 U.S. at 825. In contrast, execution impact evidence in no way reflects on the defendant's culpability. Snarr, 704 F.3d at 402; Hager, 721 F.3d at 194-95; see also Taylor, 583 F. Supp. 2d at 944 (observing that the FDPA provides for victim impact evidence but not execution impact evidence).

Indeed, execution impact testimony would upset the balance in a capital sentencing hearing: victim impact allows the jury to know about the deceased victim's life and the loss caused by the actual criminal conduct by the defendant. Hager, 721 F.3d at 195. The defendant, on the other hand, is available to offer all relevant information about his life, background, character, and

the impact any sentence will have on him.  Id.  In contrast, testimony about the impact of a potential execution on third parties will not inform the jury about any relevant issue.  Id.  Execution impact testimony also confusingly invites improper comparisons between the victim and the defendant, while resting on conjecture about the effect a future event might have on a witness's life.  See Taylor, 583 F. Supp. 2d at 944.

Execution impact testimony amounts to an impermissible plea for sympathy by referencing the witness's preferred sentencing outcome.  Just as victim impact witnesses may not express a preference for a death sentence, mitigating witnesses must not be allowed to cry out for leniency on their own behalf.  Accordingly, this Court should exclude any proffered execution impact testimony as irrelevant and speculative.[4]

**J.        This Court should not permit the defendant to allocute before the jury.**

In this case, the defendant may seek to offer at the penalty phase an unsworn allocution before the jury.  This Court should not permit him to do so.

A statement of allocution is "[a]n unsworn statement from a convicted defendant to the sentencing judge or jury in which the defendant can ask for mercy, explain his or her conduct, apologize for the crime, or say anything else in an effort to lessen the impending sentence." United States v. Jackson, 549 F.3d 963, 980 n.22 (5th Cir. 2008) (citing BLACK'S LAW DICTIONARY 83 (8th ed. 2004)).  Neither the Constitution nor statutory law afford a defendant the right to allocute before the penalty phase jury.  See United States v. Hall, 152 F.3d 381, 391-97 (5th Cir. 1998) (analyzing the history of allocution and concluding that no constitutional or statutory right to allocution exists in capital sentencing hearings), abrogated on other grounds, United States v. Martinez-Salazar, 528 U.S. 304 (2000) (conducting thorough analysis of the history of allocution

---

[4]        Presumably, the defendant's family and friends could still testify to his background and character.

and concluding that no constitutional or statutory right to allocution exists in capital sentencing hearings); United States v. Barnette, 211 F.3d 803, 820 (4th Cir. 2000) (following Hall and concluding that the defendant had no constitutional or statutory right to allocution); Purkey, 428 F.3d at 761 (same); see also Jackson, 549 F.3d at 980-81 (affirming denial of allocution statement); Lighty, 616 F.3d at 365  (defendant's attempt to admit a letter he wrote to a family member in which defendant offered statements of remorse was an attempted "end-run around this court's precedent holding that a defendant does not have a constitutional right to allocution before the jury in a capital sentencing hearing"); United States v. Honken, 541 F.3d 1146, 1172 (8th Cir. 2008) (affirming district court's denial of capital defendant's motion to allocate before the jury).

The Rules of Criminal Procedure permit allocution in a limited setting—sentencing hearings before the court.  See Fed. R. Crim. P. 32(i)(4).  The provision was intended to relieve non-capital defendants of a dilemma created by earlier policies that required them to testify at trial if they wanted to be heard before sentencing.  See Hill v. United States, 368 U.S. 424 (1962); Green v. United States, 365 U.S. 301 (1961).  In a capital penalty phase, the defendant may testify regardless of his decision to do so during the guilt phase.  See Burton v. Thaler, 863 F. Supp. 2d 639, 658 (S.D. Tex. 2012).  Of course, a capital defendant may always allocute to the court after the jury makes its sentencing recommendation.  See Hall, 152 F.3d at 392.  But Rule 32 provides no basis for concluding that defendants enjoy a right to make an unsworn statement to the jury. See, e.g., Purkey, 428 F.3d at 761 (holding the plain language of the rule does not dictate a right to allocution in the capital context); Hall, 152 F.3d at 392.  In any event, the Rules of Criminal Procedure have limited reach here: federal capital sentencing is governed by the FDPA, which does not authorize allocution.  Because it was enacted after Rule 32, the FDPA controls in the event of a conflict.  See Sutherland Statutory Construction, § 46.05 at 105 (5th ed. 1992) (citing

authorities therein).

In the absence of any rule authorizing allocution before a capital sentencing jury, the defendant cannot justify the procedure under the FDPA's liberal evidentiary standard (18 U.S.C. § 3593(c)). An unsworn and unconfronted statement by the defendant would be, for want of any indicia of reliability, substantially more prejudicial than probative. Cf. California v. Green, 399 U.S. 149, 158 (1970) (referring to cross-examination as "the greatest legal engine ever invented for the discovery of truth"). Permitting the defendant to make an unsworn and unexamined statement would deny the jury essential information necessary for the determination of credibility. In line with the reasoning of the appellate courts, this Court should likewise bar any effort by the defendant to present an unsworn allocution to the sentencing jury.[5]

## K.    The defendant should be precluded from arguing that the defendant will never be released from prison.

In briefing regarding jury instructions, the United States opposed the defendant's proposed language which asserted that if the defendant was sentence to life in prison, he would never be released, and that if he was sentenced to death, he would be executed. See Doc. No. 942 at 13. The Court's final draft instructions do not include that language. The Court should further order defense counsel not to present arguments as to whether the defendant will ever be released from prison or whether he will be executed.

---

[5]    Admittedly, some courts have permitted limited opportunities for capital defendants to allocute in capital cases. See, e.g., Exhibit A at 19-23; United States v. Wilson, 493 F. Supp. 2d 509, 510-11 (E.D.N.Y. 2007); United States v. Henderson, 485 F. Supp. 2d 831, 845-47 (S.D. Ohio 2007); Exhibit B at 20-21 (concerning, in Lujan, a written statement from the defendant provided to the prosecution in advance, as well as necessary limiting instructions to the jury, and appropriate summation comment). These decisions are unpersuasive in the face of the well-reasoned opinions of the Fourth, Fifth, and Eighth Circuits, which have all affirmed decisions to exclude allocutions in the face of patent limitations on the reach of Rule 32.

As noted in earlier briefing, the ultimate execution of a sentence, whether it be death or life in prison, is speculative.  As the last three years of compassionate-release litigation have shown during the COVID-19 pandemic, defendants previously sentenced to life can be released from prison.  See, e.g., United States v. Tidwell, 476 F. Supp. 3d 66, 68 (E.D. Pa. 2020) (granting compassionate release under 18 U.S.C. § 3582(c)(1)(A) for defendant serving life sentence for murder and related offenses based on defendant's terminal cancer diagnosis); see also United States v. Bass, 17 F.4th 629, 640 (6th Cir. 2021) ("We assume that there are circumstances that would warrant compassionate release for a defendant . . . sentenced [to life without the possibility of release].").  In the face of such unknowns, arguments definitively telling the jury what will happen to the defendant are improper and should not be permitted.

**L.    The defendant should be precluded from introducing mitigating evidence at the eligibility phase.**

At the defendant's request, the Court bifurcated the sentencing proceedings into an eligibility phase and a sentence selection phase.  See Doc. No. 936 at 13-14.  At the eligibility phase, the jury will decide whether the defendant was 18 years old or older at the time he committed each count, whether a threshold intent factor applies to each count under 18 U.S.C. § 3591(a)(2), and whether a statutory aggravating factor applies to each count.  Id. at 13.  The sentence selection phase will involve the "determination of and weighing of all established aggravating and mitigating factors."  Id.  Under this procedural structure, the jury will not consider mitigation evidence in the eligibility phase, as that phase is solely focused on whether the defendant is statutorily eligible for the death penalty.

The defendant indicated in earlier filings that he might seek to present mental health evidence at the eligibility phase.  See Doc. No. 880 at 8.  However, in his notice, the defendant

stated he intends to present mental evidence to support mitigating factors under 18 U.S.C. § 3592(a)(1), (6).  He did not mention any intention of introducing mental health evidence to counteract a threshold intent factor or aggravating factor.  <u>See</u> Doc. No. 1059-1 at 2.  The United States therefore anticipates the defendant's mental health experts will testify only at the sentence selection phase.  The Court should confirm the defendant's assertions in his Rule 12.2(b)(2) Notice and preclude the defendant from introducing evidence related to mitigating factors at the eligibility stage.

As noted above, the Court may exclude evidence where "probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jurors."  18 U.S.C. § 3593(c).  The only issue that jurors should consider during the eligibility phase is whether the defendant is statutorily eligible for the death penalty.  Mitigation evidence has no relevance during this phase and it should not be permitted.

## Conclusion

For the reasons discussed herein, the Court should grant the Government's Omnibus

Penalty Phase Motion *in Limine.*

Respectfully submitted,

ERIC G. OLSHAN
UNITED STATES ATTORNEY

s/Eric G. Olshan
ERIC G. OLSHAN
U.S. Attorney
IL ID No. 6290382

s/Troy Rivetti
TROY RIVETTI
Assistant U.S. Attorney
PA ID No. 56816

s/Soo C. Song
SOO C. SONG
Assistant U.S. Attorney
DC ID No. 457268

s/Nicole Vasquez Schmitt
NICOLE VASQUEZ SCHMITT
Assistant U.S. Attorney
PA ID No. 320316

s/Mary J. Hahn
MARY J. HAHN
Trial Attorney
Civil Rights Division
DC ID No. 500193

s/Barry K. Disney
BARRY K. DISNEY
Trial Attorney
Capital Case Section
KS ID No. 13284

s/Aaron J. Stewart
AARON J. STEWART
Trial Attorney
Capital Case Section
OK ID No. 31721