IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 18-292 |
| | ) | |
| ROBERT BOWERS | ) | |

**MOTION FOR MISTRIAL OR, ALTERNATIVELY, TO STRIKE CLOSING
AND REBUTTAL ARGUMENT AND ISSUE CURATIVE INSTRUCTION**

Robert Bowers, through counsel, files the following objections to the government closing and rebuttal closing arguments. The defense moves for a mistrial. Alternatively, the Court should strike the cited arguments and other similar arguments and issue a general curative instruction noting prosecutorial misconduct.[1] Failure to do so violates Mr. Bowers' Fifth Amendment right to due process, Sixth Amendment right to a fair trial, and Eighth Amendment right to a reliable and non-arbitrary sentencing proceeding.

**I.      Objections to Government's Closing Argument**

**1.      "Worst anti-Semitic mass shooting in history."**

```
4          MR. OLSHAN:  On the morning of October 27, 2018,
5    Robert Bowers murdered 11 innocent people at the Tree of Life
6    Synagogue in Squirrel Hill.  He turned an ordinary Jewish
7    Sabbath into the worst anti-Semitic mass shooting in US
8    history.  And he is proud of it.  That's why you're here.
```

---

[1] Should the Court deny the defense request for mistrial, it should strike the argument and issue a general curative instruction noting pervasive prosecutorial misconduct. *See United States v. Grayson*, 166 F.2d 863, 871 (2d Cir. 1948) ("(M)erely to raise an objection to (improper) testimony and more, to have the judge tell the jury to ignore it often serves but to rub it in.").

The way the government invoked this phrase improperly compares this crime with other crimes, which is not an aggravating factor and does not provide a legitimate basis for death sentence, in violation of the Eight Amendment and the Federal Death Penalty Act (FDPA). It also asks the jury to "send a message" and to impose a death sentence to satisfy community expectations.

### 2.    "[H]e is proud of it," "not a word of remorse," and "he hates Jews."

```
18  ║   history.  And he is proud of it.  That's why you're here.
19  ║           That morning was a gray and drizzly Pittsburgh
```

```
 4  ║           All of the carnage he created all these years later,
 5  ║   he hates Jews even more than he did then.  He said that to
 6  ║   Dr. Corvin.  In the 15 total meetings the defendant had with
 7  ║   defense experts, Dr. Corvin, Dr. Nadkarni and Dr. Rogers, over
 8  ║   the last almost two years, not a word of remorse.            --
```

The repeated present tense phrasing -- in contrast to the past-tense phrasing in the death notice and instructions -- implicitly invokes Mr. Bowers' recent statements to mental health (as compared to what said he immediately after the shooting) as basis for the non-statutory aggravators of religious animus and lack of remorse. This present-tense phrasing also implicitly invokes his failure to testify, in violation of the Fifth Amendment, and improperly shifts the burden to Mr. Bowers. Finally, this is an improper use (as argued previously) of his statements to defense Rule 12.2 experts as a basis to support the government's aggravators.

2

### 3.  "You have heard and seen the proof of his bigoted, white supremacist, anti-Semitic views" and other comments of this nature.

```
22          You have heard and seen the proof of his bigoted,
23    white supremacist, anti-Semitic views.  There is no doubt.
```

This argument goes beyond what is alleged in the non-statutory aggravator as his motivation for the crime and asks the jury to treat his anti-Semitic views and statements—including ones divorced in time, place, and meaning from the crime, *e.g.*, statements about Holocaust—in the abstract as aggravating and grounds for a death sentence. It also violates Mr. Bowers' First Amendment rights.

These types of comments suggest that Mr. Bowers should be held responsible for all the evils of ant-Semitism such as Hitler's actions and the Holocaust and is not a noticed aggravator. It further violates Mr. Bowers' rights under the Eighth Amendment, the FDPA, and invites the jury to consider impermissible external factors.

### 4.  Repeated invocation of the heroism of the law enforcement officers, including those far afield from the case, such as the serving of two tours of duty in the Middle East.

```
15          You heard from Officer Michael Smidga, who survived
16    two tours in the Middle East, only to be sprayed with glass
17    shrapnel to his face and ear when the defendant shot at him
18    and Dan Mead as they approached the front doors of Tree of
19    Life trying to save lives.
```

This evidence does not support the injury to surviving victims aggravator, and it is not a legitimate basis to impose a death sentence. It violates the Eighth Amendment and the FDPA.

**5.  Leaving an empty magazine from the AR-15 and leaving it on the steps as bait so that he could kill law enforcement too.**

```
3              He did not give up.  No.  During that time, he took
4     an empty magazine from his AR-15 and left it on a set of steps
5     near the classroom where he decided to hide.  He left it there
6     as bait.  Bait for the police so that he could kill them, too.
7     There were no more Jews around for him to kill.  So he decided
8     to try to kill the police.
```

This is a misstatement of the evidence.

**6.  Stating that "if the evidence supporting one of his claims is suspect, it's all suspect."**

```
19             He doesn't have epilepsy.  Bear this in mind as you
20    consider the credibility of all of the defendant's mental
21    health evidence.  Because if the evidence supporting one of
22    his claims is suspect, it's all suspect.  Second, the
23    defendant also hasn't established that he suffers from
24    schizophrenia.
```

This is a misrepresentation of the law as well as the Court's instruction on witness credibility.

**7.  Distortion of the defense opening statement in the Sentence Selection Phase.**

```
10          In her opening statement in this phase, Ms. Long told
11   you that there has been enough death.  I want you to think
12   about what that argument really means, ladies and gentlemen.
13   It means that the more people someone kills, the less
14   appropriate it is to impose the death penalty.  If that were
15   right, it would mean that the most egregious cases with the
16   most victims, cases like this one, cases that are exactly why
17   the law allows for the death penalty, would be somehow less
18   deserving of that ultimate sentence.
19          That is a request that flies in the face of the
20   aggravating factors in this case.  By extension, it's a
21   request that you ignore the weight of aggravators as they
22   increase and get heavier on the scale.  And you should reject
23   it if you hear it again.
```

This is a prejudicial distortion and misstatement of the defense opening statement, suggesting that the defense argued that the more victims, the less the law allows for the death penalty.

### 8.  Distortion and misstatement of defense mental health evidence.

```
14          No defendant who acted because of hate would ever be
15   appropriate for the death penalty because they acted.  That
16   would mean the Nazis, all of whom hated Jews, were all
17   schizophrenic because they actually went out and killed the
18   people they hated, and you know that's not true.  And that is
19   not the law.  Again, you should reject it.
```

This is a prejudicial distortion and misstatement of the defense mental health expert testimony, asserting that the defense meant that all the Nazis who exterminated Jews were

schizophrenic because they hated Jews and, by extension, would not deserve the death penalty.

### 9. Damage to the prayer book or the synagogue itself.

```
25          Don't forget the prayer books like this one


 1    (indicating), torn apart by the defendant's gunfire in a house
 2    of worship.  Witnesses to the desecration of that sacred
 3    space, a sanctuary.  Feel their weight.
```

Damage to the synagogue or to the items inside do not support any noticed aggravator, nor do they provide a legitimate basis for death sentence.

### 10. Commenting on the absence of a mitigating factor involving epilepsy.

```
 2    deserves.  What we do dispute is what the defendant has failed
 3    to prove.
 4          The defendant has failed to prove that he suffers
 5    from epilepsy.  Although you heard hours and hours of
 6    testimony about the defendant's purported epilepsy, it's not
 7    mentioned in any of the 115 asserted mitigating factors, none.
```

This argument is inaccurate, improperly shifts the burden to Mr. Bowers, and it denigrates the strategic choices and the credibility of defense counsel.

### 11. Commenting on the absence of physical or sexual abuse.

6

```
15          A few things to remember as you consider what
16    mitigating weight to assign to anything related to the
17    defendant's early life.  The defendant suffered no physical or
18    sexual abuse.  His mother has been with the same man, Ray
```

This argument improperly shifts the burden to Mr. Bowers an suggests that mitigation evidence must include evidence of physical or sexual abuse.

**12.    Repeatedly suggesting that mitigation must have a nexus to the crime.**

```
2          The defendant got away from his mother when he was in
3    his teens.  He committed his crimes when he was 46.  That's
4    almost 30 years later.  He was not a child.  He was a grown
5    man.  He was responsible for his actions.  Not his family and
6    things that happened decades earlier.  He was.  He is
7    responsible for his actions.  Don't forget that when you're
8    considering what mitigation the defendant has proven and what
9    weight, if any, it deserves on your scale.
```

This is one of example of several arguments made suggesting that the jury should disregard any mitigating evidence that does not have a nexus to the offense.

**13.    Urging jurors to reject mental health evidence because it would mean that the death penalty should never be imposed.**

```
 3        They are saying that the worse a crime is, the more
 4   mentally ill the perpetrator must be.  And the more mentally
 5   ill the perpetrator is, the less responsible they are at
 6   sentencing.
 7        That is a convenient argument against the death
 8   penalty.  Not only has the defendant failed to prove his
 9   mitigation on this point, but that sort of logic would mean
10   the defendant would never -- the death penalty would never be
11   appropriate.  Because if the death penalty is only available
12   in the most serious cases, then defendants in the most serious
13   cases necessarily are the most mentally ill.
```

This is a distortion of the defense position and the defense mental health evidence. It also encourages the jurors to reject the mental health evidence because if they consider it or give it weight, it would mean that the death penalty could never be imposed.

**14.  The loss of each victim alone is a sufficient reason to impose the death penalty.**

```
 9        Joyce Fienberg, her loss is sufficient alone to
10   justify a sentence of death.  Richard Gottfried, his loss
11   alone is sufficient to justify a sentence of death.
12        Rose Mallinger, her loss alone is sufficient to
13   justify a sentence of death.  Jerry Rabinowitz, his loss alone
14   is sufficient to justify a sentence of death.
```

These are repeated misstatements of the law, encouraging the jury to ignore their duty to consider and give weight to mitigating evidence and to engage in the required weighing process.

**15.  Tree of Life as a trial exhibit.**

```
20 │  friendship and comfort.  And on that day, the defendant
21 │  forever destroyed that sense of sanctuary, and he forever did
22 │  desecrated an actual sanctuary.  He chose this holy place at
23 │  the site of his mass shooting, and he turned this place into
24 │  an exhibit in his criminal trial.
```

This invites the jury to fault Mr. Bowers for exercising his right to a trial and to fault him for the government's selection of trial exhibits.

**16.    Asking the jury to impose the death penalty for victims "who can't speak for themselves."**

```
4 │         To sentence the defendant to death, you must only
5 │  find that the aggravating factors sufficiently outweigh any
6 │  mitigating factors.  When you're deciding what is sufficient,
7 │  don't forget the dead.  The ones who couldn't speak for
8 │  themselves.
```

This argument improperly asks the jury to act on behalf of the victims or to speak for the victims by voting for death.

17.  Improper argument; violation of Court Order and contrary to Jury Instructions

```
15 │         He told Dr. Corvin he wanted to know how effective
16 │  his shooting was.  Now, you heard Dr. Corvin say on Friday
17 │  that the defendant is somehow not capable of feeling remorse.
18 │  Put aside that no other expert claimed that before Dr. Corvin,
19 │  who didn't bother to say anything about remorse in his 29-page
20 │  report, and use your common sense, just like you have all
21 │  along.
```

This argument invokes Mr. Bowers' statements (or absence of statements) to government mental health experts to argue the lack of remorse aggravating factor.

18.        **Improper argument; misstatement of the law**

```
 8            This defendant is 50 years old.  He's an adult, and

 9     he committed these horrific murders when he was 46.  He's not

10     an impressionable teenager.  He was 46 years old.  There is no
```

This argument implies that someone less than 18 years can be given the death penalty.

**19. For the reasons previously argued, the following portions of the government's closing are improper:**

a.        The government's invocation of and reliance upon the history of the Torah from the Czechoslovakian village decimated by the Holocaust, the history of the Tree of Life building and congregation, and the history of the Squirrel Hill community.

b.        The impact of the crime on the broader community.

c.        Improper victim impact evidence, including the emphasis on victim's devotion to their faith and surviving victim impact.

d.        Improper evidence of the psychological and emotional injuries to surviving victims, including Officer Matson's thoughts of ending his life, and Officer Mead's view of himself as "crippled, worthless piece of shit," particularly where the government cannot show a causal link between the shooting and many of Officer Mead's health issues.

e.        Improper use of statements made by Mr. Bowers to mental-health experts, both government and defense, to support the government's statutory and non-statutory aggravators.

f.        Improper, prejudicial, and cumulative use of 911 calls and graphic photos

during closing.

## II.    Objections to Government's Rebuttal Closing Argument

### 1.    Rebuttal argument well beyond the scope of defense closing argument; improper argument

The government repeated arguments made in closing argument rather than rebut

defense arguments, essentially making two full closing arguments, rather than one

closing argument and a rebuttal closing argument.

```
 1          Victim impact.  The defendant, in the course of one
 2   morning, decimated the minyan for the Tree of Life, New Light
 3   and Dor Hadash congregations.  The historic beautiful images
 4   and photographs of that holy sanctuary, the Pervin Chapel,
 5   where the Simons held their wedding and the Mallinger family
 6   held bar mitzvah after bat mitzvah after bar mitzvah.  It's
 7   forever marred, their lives forever marred by the violence,
 8   blood and destruction and their deaths of those innocent
 9   family members.  These family members have gaping holes in
10   their hearts and holes in their lives and they have the sharp
11   pain of grief every day.

12          Religious animus.  This defendant hated Jews, and
13   that's why he killed them.  And you know he hated Jews from
14   his Gab posts.  You know he hated Jews because when he was
15   taken into custody after he had killed all these people, he
16   told law enforcement, "All these Jews need to die.  I just
17   want to kill Jews."

 3          The selection of target.  The defendant viewed it as
 4   a high-value target, the Statute of Liberty.
```

```
10              Lack of remorse.  He believes he deserves medals and
11      parades for what he did.  All of this goes on the scale.  He
12      compared what he did to the founding fathers in the history of
13      our country establishing the US Constitution.
```

Defense counsel objected but the government continued.

```
23              Andrea Wedner told you the emotional and
24      psychological harm and anxiety she still experiences every day
25      realizing how close she came to dying.  You heard her 911
```

Defense counsel again objected but the government still continued.

```
 9              Remember Michelle Rosenthal going to the airport,
10      needing to tell her parents about what had happened.  Remember
11      that pain.  She had told her father, "Prepare for the worst
12      about Cecil."  Her father came out on a wheelchair, mouthing,
13      "David?"  And she could only shake her head no.
```

Yet again, defense counsel objected:

```
14              MS. CLARKE:  Your Honor, I have to say, this is well
15      beyond the scope and this is supposed to be rebuttal.
```

Finally, government counsel argued a concluding paragraph.

## 2.    Misstatement of the law

```
5              Your decision has to be based on the facts and on the
6    law, and you're required to follow the law, and that law is
7    clear.  You have to do the weighing.  You have to determine
8    the aggravating factors and any mitigating factors and do the
9    weighing.  And if you do that weighing, and you determine that
10   the aggravating factors sufficiently outweigh the mitigating
11   factors, then the law does require you to impose a sentence of
12   death.  That's the law.
13             Once the weighing process is complete, your
14   decisionmaking is at an end.  And you're required to impose
15   the sentence that your weighing process leads you to.
```

The government misstates the law and the Court's instruction. The instruction states that the weighing must be that the aggravating factors sufficiently outweigh the mitigating factors "to justify a sentence of death." Not merely that the aggravating factors outweigh the mitigating factors.

### 3.    Misleading argument that weighing process is mechanical.

| | |
|---|---|
| 17:00:04  237-12 | 22 counts. Multiple statutory aggravators applying |
| 17:00:10  237-13 | to those 22 counts. And now there are five nonstatem |
| 17:00:14  237-14 | foreaggravating factors and each of the 22 death eligible |
| 17:00:19  237-15 | counts, it applies to them. That's 110. We're at 192. |

| | |
|---|---|
| 16:18:47  216-13 | Here the defendant murdered 11 innocent worshippers, |
| 16:18:51  216-14 | and there are 22 death-eligible counts you had to consider. |
| 16:18:58  216-15 | And you found that multiple statutory aggravators applied to |
| 16:19:02  216-16 | all 22 counts. You only had to find one. You found **82**. |
| 16:19:11  216-17 | Before we even got to this final stage. |
| 16:19:13  216-18 | Please keep that in mind when you're considering |
| 16:19:16  216-19 | whether the law values life. |

This is misleading argument concerning the weighing process. It is misleading because the jury does not cumulate all the aggravating factors into its sentencing

decision. Rather, it decides count by count, and for each count there are nine statutory

and non-statutory aggravating factors in total.

### 4.    Misstatement of law and misleading argument.

```
 8          This defendant is 50 years old.  He's an adult, and
 9     he committed these horrific murders when he was 46.  He's not
10     an impressionable teenager.  He was 46 years old.  There is no
```

The argument implies that someone less than 18 years old can be given the death

penalty.

### 5.    Misleading argument suggesting mitigation must have nexus to crime.

```
17          What does Deanna Bowers' wedding certificate have to
18     do with it, that's Defense Exhibit 467, her marriage
19     certificate to Wendell Bowers from 1978.  They put that into
20     evidence.  They brought her from California and she had met
21     the defendant one time when he was eight years old.  She told
22     you she was married to the defendant's father's deceased
23     brother who had the same difficult childhood as the
24     defendant's father, but was able to move past that.  He became
```

### 6.    Improper argument that childhood does not excuse conduct.

```
 2          Childhood does matter.  But it does not control who
 3     you become as an adult.  It does not foreordain, and it does
 4     not excuse.
```

### 7.    Misstating the evidence of Dr. Corvin's testimony

Dr. Corvin testified:

14

```
17   Q.  And it was "Enjoy the Shoah"?

18   A.  That is true.

19   Q.  Do you know what the Shoah is?

20   A.  I know it's a derogatory.  I don't know what it is, but I

21   know it's intended to be a derogatory slur against Jewish

22   folks.
```

The government argued in rebuttal:

```
5         Do you remember when Mr. Olshan asked him about the

6    final Gab post right before he went in to kill 11 people, that

7    final post, "Screw your optics, I'm going in"?  The defendant

8    told Dr. Corvin he was sitting in his car when he sent that

9    final message and he forgot to add his last line.  "Enjoy the

0    Shoah."

1         Mr. Olshan asked him, "What does that mean?"  And he

2    said, "I have no idea.  Maybe it's a derogatory slur.  I have

3    no idea."
```

## 8.    Improper argument emphasizing Holocaust

```
23   account.  He testified he saw references to the "Final

24   Solution" and "Shoah," and he explained.  He told you about

25   Nazi Germany and the Final Solution, which was the intentional

1    genocide running from 1941 to 1945 in which nearly six million

2    Jews were killed.  And he told you the term Shoah, S-H-O-A-H,

3    is Hebrew for Holocaust.
```

## 9.    Improper vouching of Dr. Dietz

```
 6            The defendant doesn't have schizophrenia.  Dr. Dietz,
 7    who had a complete command of the defendant's medical and
 8    historical records and a deep understanding of white
 9    supremacist ideology, testified credibly.  And you credited
```

```
 2            And I'm actually not sure what the statements by
 3    defense counsel about Dr. Dietz's lucrative business.
 4    Mr. Burt hires him.  You know that.  And pays him more than
 5    what Dr. Dietz was paid here.  You get what you pay for.
```

**10.    Misleading and improper argument; misstatement of the law.**

```
20    depression.  But you have to weigh it against the murder of 11
21    people.  This defendant moved out and away from his mother
```

```
17            They weigh heavy, 11 murders, and your job now is to
18    consider and weigh all of that.  And we're asking you to hold
```

Mr. Bowers was not charged with murder.

**11.    Misstatement of the law and improper argument.**

```
10            First of all, it's an envelope.  The suicide note is
11    not in there.  And it contains personal documents, historical
12    documents that his grandmother sent to him, and it was found
13    in the defendant's apartment.  What is mitigating about that?
14    How does that somehow weigh against imposing the death penalty
15    for killing 11 innocent people?
```

The Court determines what is mitigating, not the jury.

**12.    Misstatement of the law and improper argument.**

```
 6          Life in prison is the minimum sentence here.  If you
 7    sentence this defendant to life in prison, you're giving him
 8    the minimum punishment.  It is a lesser punishment than death.
 9    And so you need to ask yourself, should this defendant receive
10    the minimum penalty under the law for the murder of 11
11    innocent people?  Does he deserve the minimum punishment, or
12    do these crimes demand more?  And you know the answer to that.
```

This is improper characterization of the punishment of life imprisonment without possibility of release. There is nothing before the jury about what the minimum sentence for each crime is under the statute in question. Additionally, the argument trivializes life imprisonment.

### 13.    Improper argument and improper disparagement of defense.

```
 8          Defense counsel made a lot of arguments about like
 9    not a big deal if we have a hung jury here.  "There is no hung
10    jury here."  You know, each of you are individuals.  You have
11    a duty to deliberate.  Do not agree with defense counsel's
12    invitation for you to abdicate your responsibility to
13    deliberate and weigh and come to a unanimous decision if you
14    can.
```

### 14.    Misstatement of the law and improper argument

```
 1          The weight of life.  The law values life.  But let's
 2    be clear here.  The rule of law protects that value with clear
 3    laws that impose the most severe penalty for taking an
 4    innocent life.  So when we say the law values life, let's
```

This argument misleadingly suggests the law "imposes" the death penalty when in

fact it never does. to due process, Sixth Amendment right to a fair trial, and Eighth

Amendment right to a reliable and non-arbitrary sentencing proceeding.

### 15.    Misstatement of the law and improper argument.

Repeatedly, the government argued that the "the law values [each victim's] life."

For example:

```
7         The law values the life of Rose Mallinger, a beloved
8    97-year old mother, grandmother and great grandmother, who
9    this defendant brutally murdered.
```

This distorts the victim impact aggravator into a victim-value one. The victim

impact aggravator is about the impact of the crime on each survivor, which includes the

qualities in his/her relationship with the deceased that will be missed. But that's not about

determining the "value" of the victim's "life."

### 16.    Improper and misleading argument.

```
4          Defense counsel says to you is this who we kill, this
5    person with this childhood?  Defense counsel said, "You can
6    give the weight of life to stopping the killing."  Your
7    sentencing determination here is not to be made on some sort
8    of gut reaction to, should we stop the killing?  That's not in
9    the instructions.  Your sentencing determination cannot be
10   based on some sort of notion, can we rewind the clock?  That
11   was another thing that she said.
```

This distorts defense counsel's argument and falsely suggests her argument

contravenes the instructions or must be disregarded under the instructions. Similarly, the

prosecutor's remark: "This argument that she's making about stopping the killing, that

that's something we should all value, this argument is made by an attorney who's client doesn't actually share that same idea," misleadingly suggests that Mr. Bowers' alleged lack of remorse is a reason jurors should disregard defense counsel's argument.

### 17.    Misstatement of the law; improper argument.

```
15    things right.  Your job is to hold this defendant accountable
16    to the fullest extent of the law.  Hold him accountable for
17    his decisions and his violent actions.
```

This misstates the law -- the jurors have no such "job."

### 18.    Misleading and improper argument.

```
5         The worst anti-Semitic mass shooting in US history,
6    that's how this defendant described what he did to his own
7    mental health expert.  He is proud of what he did, 11 murders,
```

Though this is in evidence as Dr. Rogers' paraphrase of Mr. Bowers' words, it is improper to ask jury to make that comparative judgment as a basis for finding sufficient outweighing/imposing death.

### 19.    Misstatement of the law; improper and misleading argument

```
12         Defense counsel did tell you, "We're not saying that
13    genetic loading sent him to the Tree of Life that day."  Then
14    why are we talking about it?  Because it's a distraction.
15    It's part of the defense narrative.
```

This argument misrepresents the law by suggesting mitigation that does not explain the crime or excuse it should not be considered. Additionally, this argument improperly denigrates defense counsel.

19

### 20.    Improper and misleading argument

```
 1          Why didn't defense counsel go over all of that with
 2   Gary Phillips, the treatment coordinator?  And you know that
 3   answer.  Because it didn't fit the defense narrative.  Because
```

This argument improperly impugns defense counsel's integrity.

### 21.    Improper argument; misstatement of the law

```
11          Ladies and gentlemen, this case is about October 27,
12   2018, and the murders of 11 innocent worshippers at the Tree
13   of Life.  And that's the type of evidence and consideration
14   that you should have been reviewing throughout these two
15   months.  What did the defendant's mother's report card from
16   high school have to do with any of this?
```

This argument suggests that mitigation is really unworthy of consideration or weight in general, given the crime.

### 22.    Misstatement of the law; improper and misleading argument

```
15          Do you trust the work of Dr. Dietz?  You've already
16   found that and answered that yes.  Defense counsel again is
```

This type of argument (repeated twice) that when jury found intent at eligibility, that means it credited Dr. Dietz's testimony that Mr. Bowers does not have schizophrenia. This misstates the legal import of the jury's eligibility phase verdict. The finding of intent did not necessarily mean the jury rejected schizophrenia or accepted Dr. Dietz's testimony

### 23.    Misstatement of the law; misleading and improper argument

```
13 ‖ in the defendant's apartment.  What is mitigating about that?
```

The government repeatedly urged the jury to discount various factors, even if established, because they are supposedly not actually mitigating. This is at odds with the instructions, which require jurors to consider each mitigating factor the juror finds (can decide what weight if any to give it). The instructions do not call on jurors to also decide if the established factor is a "mitigating" one.

### 24.    Improper argument and violation of Court Order at ECF

```
1 ‖         He won't mind that rec time is restricted or in the
2 ‖ cage because he doesn't do rec time anyway.  He can just sit
3 ‖ in his cell and watch TV.
```

This argument trivializes life imprisonment and violates the Court's Order at ECF 1396 at 10–11 (Forbidden from Considering Costs of Punishment). *See Edwards v. Scroggy*, 849 F.2d 204, 210 (5th Cir. 1988) (government's argument "improper": "What's the other reason for not giving this defendant the death penalty? That, if he gets a life sentence for murder, why he'll be up there at Parchman and won't see daylight for ten years. Do you believe that? Do you believe they're going to put him in some hole and he isn't gonna see daylight for ten years? Or do you believe he's gonna go up there and watch television and live off the taxpayers' money for ten years? And get fed and housed and given all the conveniences of life. For what. For killing him ([prosecutor] holding up exhibit [of victim].)." This argument also improperly compares the plights of the victims to Mr. Bowers' life in prison. *See United States v. Johnson*, 713 F. Supp. 2d 595, 631

(E.D. La. May 18, 2010) (granting motion for new sentencing hearing in federal capital prosecution in part based on government's argument that "He [defense counsel] essentially asks you to send him [Johnson] to his room where he gets privileges, three squares, and the ability to have visitors. The only visitors that [the victim] will have come to his grave site.").

### 25.    Improper and misleading argument

```
1          The Pittsburgh police officers who put their bodies
2    in front of the defendant's bullets to prevent more killings,
3    to save a downed officer and prevent this defendant from
4    unleashing further violence, put all of that on the scale.
```

Invoking the heroism of Pittsburgh police officers to "put on the scale" is improper argument. This is not an aggravating factor and is not a legitimate basis for a death sentence.

### 26.    Misstatement of the law; misleading and improper argument

```
17          Whatever you determine about who the defendant was or
18    who he is, it doesn't outweigh his decisions and his violent,
19    lethal attack on October 27th.  You need to weigh the largest
```

This argument misstates the standard. Aggravating factors have to outweigh the mitigating factors and indeed, do so sufficiently, to justify and sentence of death.  If aggravating factors and mitigating factors are in equipoise, that determination requires a life sentence.

### 27.    Improper argument; misstatement of the law

```
12            That's for the murder of one person, the aggravated
13   murder of one person.  And here we have 11.
```

This misstates the law, implying mandatory death penalty for the killing of 11 persons.

### 28.    Improper argument; misstatement of the law

```
9   Do the facts and the law call for death as the appropriate
10  sentence?  That's the framework.
```

The law never requires a death sentence.

### 29.    Improper argument; misstatement of the law

```
25            For this defendant, 11 wasn't enough, so please

1   consider this stop the killing argument within the context of
2   this case and this defendant.  Because in his own words, he
3   wished he had killed more.
```

The government did not allege future danger. This argument injects an unnoticed and arbitrary factor. And it relies improperly on statement made by Mr. Bowers to mental health experts.

### 30.    Improper argument; misuse of Mr. Bowers' statements to government mental health experts, in violation of the instructions and this Court's Order

```
3             Dr. Porterfield also did not address the many, many
4    things that the defendant himself denied about his own life.
```

In arguing regarding Dr. Porterfield's testimony and the events of Mr. Bowers' childhood, the government's argument was very clearly not tethered to defense experts alone.

**31.    Improper argument; reliance on statements made to mental health experts**

Heavy emphasis on lack of remorse from statements made to mental health experts. And heavy emphasis in argument on Mr. Bowers' failure to express remorse to those experts, which is burden shifting and a Fifth Amendment violation.

**32.    Improper argument; misstatement of law**

```
13          Dr. Nadkarni, he came in here and testified for hours
14     about epilepsy.  He saw it everywhere.  And they've walked
15     away from that, because it didn't hold up.
16          They called Dr. Rogers.  And his testimony both
17     conflicted with Dr. Nadkarni on its own and it also didn't add
18     up.  So in this final phase, defense counsel called
19     Dr. Corvin.
20          And defense counsel on Friday tried to downplay both
21     of those evaluations.  Discount what they did.  And in the
```

This is an improper suggestion that calling Dr. Corvin in the sentence selection phase was wrong, or an acknowledgement or recognition by defense counsel that Drs. Rogers and Nadkarni lacked credibility. The inquiry at the eligibility phase was a different one. There is nothing at all improper about calling Dr. Corvin in the sentence selection phase. It is highly improper to suggest any credibility determinations in the minds of defense counsel based on that proper choice.]

**33.    Improper argument; comment on 6th Amendment right to counsel**

```
13          And one more thing.  This argument that she's making
14     about stopping the killing, that that's something we should
15     all value, this argument is made by an attorney whose client
16     doesn't actually share that same idea.  This defendant is
```

This argument improperly comments on the right to counsel and strategic choices counsel makes, and denigrates defense counsel.

### 34.    Improper argument; improper vouching for co-counsel

```
15          Mr. Olshan did a very thorough review of the
16     nonstatutory aggravating factors.  I'm not going to go through
```

### 35.    Improper argument

```
21          The family members, the people at the Tree of Life
22     Synagogue who experienced this defendant's horror, they came
23     in and they bore witness on behalf of those 11 men and women
24     who cannot speak for themselves.  And the law values their
25     life.
```

This argument improperly asks the jury to act on behalf of the victims or to speak for the victims by voting for death.

Respectfully submitted,

> _/s/ Judy Clarke_
> Judy Clarke
> Clarke Johnston Thorp & Rice, PC
>
> _/s/ Michael N. Burt_
> Michael N. Burt
> Law Offices of Michael Burt, PC
>
> _/s/ Michael J. Novara_
> Michael J. Novara
> First Assistant Federal Public Defender
>
> _/s/ Elisa A. Long_
> Elisa A. Long
> Supervisory Assistant Federal Public Defender
>
> _/s/ Ashwin Cattamanchi_
> Ashwin Cattamanchi
> Assistant Federal Public Defender